SHARON A. URIAS (SBN 016970)
TODD J. LANGFORD (*Pro Hac Vice* Pending)
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Ste. 700
Scottsdale, AZ  85255
Tel.  480.306.5458
Email: Sharon.Urias@gmlaw.com
          Todd.Langford@gmlaw.com

Attorneys for Plaintiff BoxNic Anstalt

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BoxNic Anstalt,<br><br>                              Plaintiff,<br><br>vs.<br><br>Gallerie degli Uffizi,<br><br>                              Defendant. | Case No.<br><br>**COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff BoxNic Anstalt for its Complaint against Defendant Gallerie degli Uffizi, by and through undersigned counsel, hereby states and alleges as follows:

### NATURE OF THE CASE

This is an action for reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(v) seeking injunctive and declaratory relief.

### INTRODUCTORY STATEMENT

This action seeks a finding that Defendant engaged in reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(v) when it commenced an administrative Uniform Domain Name Dispute Resolution Policy ("UDRP") action against Plaintiff, without reasonable probable cause, in an effort to suspend, disable and illegally obtain ownership of the

<uffizi.com> domain name.  This action also seeks a declaratory judgment that Plaintiff's registration and use of its valuable domain name does not constitute trademark infringement or unfair competition, and that Plaintiff is the rightful registered name holder or registrant of the <uffizit.com> domain name.

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff BoxNic Anstalt ("Plaintiff" or "BoxNic") is a corporation organized and existing under the laws of the Principality of Liechtenstein, located at Landstrasse 39, 9490 Vaduz (Liechtenstein).  Plaintiff sells tickets online at <uffizi.com> to museums, tours, cultural and sporting events in Italy, including the Gallerie degli Uffizi.

2.     Upon information and belief, at all relevant times hereto, Defendant Gallerie degli Uffizi ("Defendant") conducts business as a museum known as the "Uffizi Gallery," located at Piazzale degli Uffizi, 6, 50122, Florence (Italy).

3.     This Court has subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1125 et seq., 28 U.S.C. § 1338(a) and the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

4.     This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 through 2202.

3.     Venue is proper in this Judicial District pursuant to 28 U.S.C. 1391(b) because the property that is the subject of the action, the <uffizi.com> domain name, is located here. In addition, the relevant sponsoring registrar, GoDaddy.com, Inc. ("GoDaddy"), is located within this Judicial District and GoDaddy's terms of service require domain name purchasers to submit to jurisdiction and venue in this Court.  (*Productive People, LLC v. Ives Design, No., 2009 WL 1749751, at *1 (D. Ariz. 2009).*

4.     Pursuant to the UDRP Paragraph 4(k) and  Rules of Procedure, Paragraphs 1 and 3(b)(xiii), the UDRP Complainant Gallerie degli Uffizi (now Defendant in the present case) explicitly consented to a "mutual jurisdiction," in which challenges to a decision

under the UDRP may be brought by the Respondent (now Plaintiff in this case) in this District.

## ALLEGATIONS COMMON TO ALL CLAIMS

### BoxNic's Business and Good Faith Use of the Hijacked Domain Name

5.     Plaintiff first registered the <uffizi.com> domain name with GoDaddy.com on or about December 18, 1998.  A true and correct copy of the WhoIs record reflecting the registration of <uffizi.com> is attached hereto as Exhibit A.

6.     The term "uffizi" is a common Italian word, being the plural of "uffizio" an old-fashioned version of the word "ufficio" (office).  The name "Gallerie degli Uffizi" derives from the fact that the museum is located in the same building where, in the sixteenth century, the famous Medici family that governed Florence established the city's administrative offices' seat (uffizi).

7.     As set forth above, Plaintiff sells tickets via the Internet at <uffizi.com> for admission to various museums, cultural and sporting events in Italy, including museums in Florence, Italy, including the Uffizi Gallery.  Plaintiff has been selling tickets at <uffizi.com> since approximately 2007.  Since that time, Plaintiff has included various disclaimers on its website notifying visitors that it is not affiliated with Defendant, as well as including a link to the Uffizi Gallery's website.  Attached hereto as Exhibit B is a true and correct copy of a screenshot from archive.org displaying the home page of <uffizi.com> on October 7, 2008.

8.     Plaintiff's website currently contains disclaimer language, which has been on the website since at least approximately 2007, stating "we are not the official site and we have not got connection to the Uffizi Gallery or other museums."  Attached hereto as Exhibit C is a true and correct copy of a screenshot displaying the current home page of <uffizi.com>.  As such, Plaintiff has engaged in efforts to avoid any consumer confusion and to explicitly inform its website visitors that it is not affiliated with Defendant and does not compete with Defendant.  Moreover, Plaintiff's website, which is directed to tourists

traveling to Italy, is a ".com" domain created and existing in the United States.  The website also is in English.  Defendant's website, www.uffizi.it, on the other hand, is an ".it" domain created and existing in Italy.  Defendant's website is in Italian and may be translated to English for non-Italian readers.

9.     In addition to registering <uffizi.com> in 1998 and using it in good faith to conduct its online ticket sales since approximately 2007, on October 31, 2016, Plaintiff registered "Uffizi.com" as a figurative trademark with the European Union Intellectual Property Office ("EUIPO"), Reg. No. 015655459 ("Uffizi Design Mark").  Attached hereto as Exhibit D is a true and correct copy of the registration certificate for the Uffizi Design Mark.

10.     At no time prior to the filing of the UDRP proceeding, from approximately 2007 through the present, did Defendant ever contact Plaintiff complaining of alleged trademark infringement, cybersquatting or contest Plaintiff's right to use its "uffizi" figurative trademark or the domain name <uffizi.com>.  BoxNic first learned of this dispute on or about February 2, 2018 when it received a notification email from GoDaddy that <uffizi.com> was named in a World Intellectual Property Organization ("WIPO") dispute. BoxNic received the Notice of Complaint on or about February 9, 2018.

11.     Nevertheless, Plaintiff has been using its <uffizi.com> domain name in good faith since at least 2007 to sell tickets in connection with its Uffizi Design Mark in commerce.

**The UDRP Action Against the Hijacked Domain Name**

12.     The www.uffizi.it domain name ("Italian Uffizi Domain") was registered on October 28, 1999.  Upon information and belief, sometime between September 3, 2011 and November 2, 2012, a third party transferred ownership and control of the Italian Uffizi Domain to Defendant.  It was not until in or after August 2013 that Defendant began selling tickets online to multiple museums within Italy, including the Gallerie degli Uffizi.

13.     Moreover, Defendant does not have worldwide exclusive rights to use of "uffizi," as there are at least 35 trademarks registered worldwide containing "uffizi" as of April 23, 2018.   Attached hereto as Exhibit E is a listing of worldwide registrations containing "uffizi," as compiled by the European Union Intellectual Property Office ("EUIPO") and WIPO.

14.     Despite the fact that Plaintiff has been using the Uffizi Design Mark in commerce since at least 2007 in connection with its services, and despite the fact that Plaintiff has marketed those services under the Uffizi Design Mark via the Internet at its <uffizi.com> domain since at least 2007, Defendant never contacted Plaintiff to assert any alleged trademark ownership rights in "uffizi" until 2018, when it initiated the UDRP proceeding.

15.     On February 9, 2018, approximately *eleven years* since Plaintiff began selling tickets at <uffizi.com>, Plaintiff received notice that Defendant had submitted a domain dispute complaint against Plaintiff before WIPO, Case No. D2018-0166, asserting that Plaintiff had registered and used <uffizi.com> in bad faith.   A true and correct copy of the domain dispute complaint is attached hereto as Exhibit F.

16.     Plaintiff filed a response to Defendant's complaint on March 5, 2018, refuting Defendant's allegations of bad faith and accurately setting forth the facts surrounding Plaintiff's registration and use of <uffizi.com>, which use has never interfered with any of Defendant's purported rights.   A true and correct copy of Plaintiff's response is attached hereto as Exhibit G.

17.     Despite Defendant's failure to show that Plaintiff had engaged in bad faith, the WIPO Arbitrator erroneously decided in favor of the UDRP   Complainant   (i.e. Defendant) on April 2, 2018, and ordered that <uffizi.com> be transferred away from Plaintiff.  A true and correct copy of the WIPO decision is attached hereto as Exhibit H.

18.     The <uffizi.com> domain name is now pending transfer to Defendant, as the result of this erroneous domain dispute decision from WIPO.

19.     The Court is not bound by this decision whatsoever.

20.     According to its domain name dispute procedure, GoDaddy has delayed transferring <uffizi.com> to Defendant until April 26, 2018, providing Plaintiff an opportunity to file this action and contest the WIPO Arbitrator's finding.

21.     Although the <uffizi.com> domain name has not yet been transferred away from Plaintiff, the instant action is ripe for review by this Court, because such transfer is inevitable and imminent absent further action by Plaintiff.

22.     Plaintiff asserts that <uffizi.com> should not be transferred to Defendant.

23.     Plaintiff also asserts that Defendant does not have exclusive rights to use "uffizi" and that because both parties were using "uffizi" concurrently for several years, Defendant does not have superior rights to the mark.

## FIRST CLAIM FOR RELIEF

### (Reverse Domain Name Hijacking – 15 U.S.C. § 1114(2)(D)(v))

24.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

25.     To prevail on a reverse hijacking claim, Plaintiff must show that: (i) BoxNic is the domain name registrant for the <uffizi.com> domain name (the "Hijacked Domain Name"); (ii) the Hijacked Domain Name was suspended, disabled, or transferred under GoDaddy's domain dispute resolution policy; (iii) the UDRP Complainant has notice of this action by service or otherwise; and (iv) Plaintiff's registration or use of the Hijacked Domain Name is not unlawful under the ACPA.

26.     Plaintiff can demonstrate each of the four requirements to prevail in this reverse hijacking claim:

(a)     Plaintiff is the current owner of the Hijacked Domain Name, as set forth in Exhibit A, which is a true and correct copy of a Whois Registration Report.

(b)     The Hijacked Domain Name is subject to imminent transfer as a result of the improper UDRP decision (Exhibit H).

(c)     Contemporaneous with the filing of this Complaint and its Exhibits with the Court, Plaintiff has provided notice of the same by email upon the UDRP Complainant, its attorney, and the sponsoring registrar for the Hijacked Domain Name, GoDaddy.  Additionally, this Complaint, its Exhibits, and a properly-issued Summons, shall be served upon Defendant in due course.

(d)     Neither Plaintiff's registration, nor its use of the Hijacked Domain Name is unlawful under the ACPA.  Plaintiff has neither registered nor used the Hijacked Domain Name in bad faith, as further set forth in the following paragraphs.

27.     Plaintiff at all times has acted in good faith, using the Hijacked Domain Name at least as early as 2007 to sell tickets under its "uffizi" brand, thus constituting a bona fide offering of goods and services precluding a finding of "bad faith" under the ACPA. Plaintiff's rights and interests in the domain name <uffizi.com>  developed and grew during an at least eleven-year period, from 2007 to 2018, during which, upon information and belief, Defendant was fully aware  of Plaintiff's activities, but took no action to assert a claim to the "uffizi" mark.  Also, Defendant did not file its application for trademark registration with EUIPO until January 25, 2018.   Based upon these  facts, Plaintiff has a superior right and legitimate interest in the Hijacked Domain Name.

28.     Also, Plaintiff acquired the Hijacked Domain Name in 1998 and clearly informed website visitors that it was not affiliated with or representative of the Uffizi Gallery.  Moreover, at all relevant times hereto, Plaintiff did not (and does not) sell tickets to the Uffizi Gallery at a higher price than Defendant.  Rather, Plaintiff sells the tickets at the same price and merely charges a commission for its services provided, as plainly disclosed to consumers on Plaintiff's ticket sales webpage.  Thus, Defendant has not, and does not, sustain any damages as a result of Plaintiff's use of the Hijacked Domain Name. In fact, Defendant benefits from increased ticket sales to the Uffizi Gallery as a result of Plaintiff's <uffizi.com> website and Uffizi Design Mark.  Further, Plaintiff has not offered to sell the Hijacked Domain Name to Defendant.

29.    Plaintiff is entitled to the "safe harbor" provision of the ACPA, which excludes a finding of bad faith intent for persons who "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  15 U.S.C. § 1125(d)(1)(B)(ii).  As set forth hereinabove, Plaintiff had a reasonable belief that its use of the Hijacked Domain Name was lawful for reasons including, but not limited to the following:  Plaintiff uses the domain name <uffizi.com> in connection with its sale of tickets to the Uffizi Gallery and other Italian tourist attractions; "uffizi" is a common Italian word meaning "offices;" Defendant did not engage in online ticket sales to the Uffizi Gallery via the Internet until August 2013; Plaintiff's registration of <uffizi.com> well predates Defendant's use of www.uffizi.it; Plaintiff obtained a lawful EUIPO trademark registration for the Uffizi Design Mark; and rather than diverting ticket sales from Defendant, Defendant benefits from increased ticket sales to the Uffizi Gallery by Plaintiff, who earns a commission from its ticket sales.

30.    Despite obvious facts and incontrovertible documentary evidence to the contrary, which Defendant clearly knew and/or should have known, Defendant put forth the unsupported assertion that Plaintiff registered and used the Hijacked Domain Name in bad faith.

31.    Plaintiff has never used <uffizi.com> in bad faith and has never trafficked in that, or any other, domain name.

32.    Upon information and belief, Defendant acted in bad faith to suspend, disable and ultimately win transfer of control and ownership of the Hijacked Domain Name.

33.    In short, Plaintiff neither registered, trafficked in, nor used the Hijacked Domain Name in any way that violates the ACPA.  Although Defendant may have rights to use a mark including the term "Uffizi" outside the United States, Defendant seeks to use its subsequent European Community trademark registration to hijack the prior purchase of <uffizi.com> by Plaintiff, who has superior rights to those held by Defendant, especially within the United States.

34.    Because Plaintiff's registration and use of <uffizi.com> are not unlawful under the ACPA, Plaintiff has the right to possess and maintain this domain name.

35.    The events described herein constitute reverse domain name hijacking and warrant injunctive relief for Plaintiff under 15 U.S.C. § 1114(2)(D)(v).

36.    Plaintiff also is entitled to an award of its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) under the "exceptional case" provision of the Lanham Act.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment of No Trademark Infringement)

37.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

38.    A dispute and actual controversy has arisen between Plaintiff and Defendant as to the respective rights of the parties regarding ownership of <uffizi.com> and use of the parties' respective "uffizi" marks.

39.    Accordingly, pursuant to the Declaratory Judgment Act, Plaintiff seeks an Order from this Court declaring that:  (1) Plaintiff's registration and use of <uffizi.com> and the Uffizi Design Mark do not constitute cybersquatting, trademark infringement or unfair competition under the Lanham Act; (2) Plaintiff is the rightful registered name holder, registrant and owner of the <uffizi.com> domain name; and (3) Plaintiff has lawful ownership rights to the Uffizi Design Mark under the Lanham Act.

40.    If this Court determines that Defendant is the exclusive owner of "uffizi," then Plaintiff requests an Order from the Court declaring that Plaintiff's registration and use of <uffizi.com> and the Uffizi Design Mark constitute a fair use of "uffizi."

41.    A judicial determination is necessary and appropriate at this time and under the circumstances so that the parties may ascertain their rights and duties.

**THIRD CLAIM FOR RELIEF**

**(Declaratory Judgment of Trademark Rights)**

42.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

43.     A dispute and actual controversy has arisen between Plaintiff and Defendant as to the respective rights of the parties regarding ownership of the term "uffizi" as an identifier of goods or services within the United States.

44.     Accordingly, pursuant to the Declaratory Judgment Act, Plaintiff seeks an Order from this Court declaring that Plaintiff has superior rights over Defendant in and to the mark "uffizi" for any goods or services within interstate commerce of the United States.

45.     A judicial determination is necessary and appropriate at this time and under the circumstances so that the parties may ascertain their rights and duties.

**PRAYER FOR RELIEF**

Plaintiff hereby prays for judgment as follows:

A.     That the Court enter judgment in favor of Plaintiff affirming that Plaintiff is the lawful owner of the <uffizi.com> domain name and that Defendant engaged in reverse domain name hijacking;

B.     That the Court issue an Order enjoining enforcement of the UDRP decision of April 2, 2018, which decision ordered the transfer of <uffizi.com> away from Plaintiff to Defendant;

C.     That the Court enter a declaratory judgment in favor of Plaintiff that:  (1) Plaintiff's registration and use of <uffizi.com> and the Uffizi Design Mark do not constitute cybersquatting, trademark infringement or unfair competition under the Lanham Act; (2) Plaintiff is the rightful registered name holder, registrant and owner of the <uffizit.com> domain name; and (3) Plaintiff has lawful ownership rights to the Uffizi Design Mark under the Lanham Act.  If this Court determines that Defendant is the exclusive owner of "uffizi,"

then Plaintiff requests an Order from the Court declaring that Plaintiff's registration and use of <uffizi.com> and the Uffizi Design Mark constitute a fair use of "uffizi;"

      D.     That the Court enter a declaratory judgment in favor of Plaintiff that Plaintiff has superior rights over Defendant in and to the mark "uffizi" for any goods or services within interstate commerce of the United States;

      E.     That the Court award Plaintiff its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a); and

      F.     Such other relief as the Court may deem just and proper.


## JURY DEMAND

   Plaintiffs respectfully demand a jury trial on all appropriate issues pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.


DATED:  April 24, 2018.


**RESPECTFULLY SUBMITTED,**


                          **GREENSPOON MARDER LLP**

                          /s/ Sharon A. Urias
                          Sharon A. Urias
                          Todd J. Langford
                          8585 E. Hartford Drive, Suite 700
                          **Attorneys for Plaintiff BoxNic Anstalt**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

  /s/ Mary Chapa

# EXHIBIT A

uffizi.com_godaddy_27122017

Domain Name: UFFIZI.COM
Registry Domain ID: 2801027_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2016-12-19T09:25:47Z
Creation Date: 1998-12-18T05:00:00Z
Registrar Registration Expiration Date: 2018-12-18T05:00:00Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: clientTransferProhibited
http://www.icann.org/epp#clientTransferProhibited
Domain Status: clientUpdateProhibited
http://www.icann.org/epp#clientUpdateProhibited
Domain Status: clientRenewProhibited
http://www.icann.org/epp#clientRenewProhibited
Domain Status: clientDeleteProhibited
http://www.icann.org/epp#clientDeleteProhibited
Registry Registrant ID:
Registrant Name: Registration Private
Registrant Organization: Domains By Proxy, LLC
Registrant Street: DomainsByProxy.com
Registrant Street: 14455 N. Hayden Road
Registrant City: Scottsdale
Registrant State/Province: Arizona
Registrant Postal Code: 85260
Registrant Country: US
Registrant Phone: +1.4806242599
Registrant Phone Ext:
Registrant Fax: +1.4806242598
Registrant Fax Ext:
Registrant Email: uffizi.com@domainsbyproxy.com
Registry Admin ID:
Admin Name: Registration Private
Admin Organization: Domains By Proxy, LLC
Admin Street: DomainsByProxy.com
Admin Street: 14455 N. Hayden Road
Admin City: Scottsdale
Admin State/Province: Arizona
Admin Postal Code: 85260
Admin Country: US
Admin Phone: +1.4806242599
Admin Phone Ext:
Admin Fax: +1.4806242598
Admin Fax Ext:
Admin Email: uffizi.com@domainsbyproxy.com
Registry Tech ID:
Tech Name: Registration Private
Tech Organization: Domains By Proxy, LLC
Tech Street: DomainsByProxy.com
Tech Street: 14455 N. Hayden Road

uffizi.com_godaddy_27122017

Tech City: Scottsdale
Tech State/Province: Arizona
Tech Postal Code: 85260
Tech Country: US
Tech Phone: +1.4806242599
Tech Phone Ext:
Tech Fax: +1.4806242598
Tech Fax Ext:
Tech Email: uffizi.com@domainsbyproxy.com
Name Server: NS65.DOMAINCONTROL.COM
Name Server: NS66.DOMAINCONTROL.COM
DNSSEC: unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/
>>> Last update of WHOIS database: 2017-12-27T11:00:00Z <<<

For more information on Whois status codes, please visit
https://www.icann.org/resources/pages/epp-status-codes-2014-06-16-en

The data contained in GoDaddy.com, LLC's WHOIS database,
while believed by the company to be reliable, is provided "as is"
with no guarantee or warranties regarding its accuracy. This
information is provided for the sole purpose of assisting you
in obtaining information about domain name registration records.
Any use of this data for any other purpose is expressly forbidden without the
prior written
permission of GoDaddy.com, LLC. By submitting an inquiry,
you agree to these terms of usage and limitations of warranty. In particular,
you agree not to use this data to allow, enable, or otherwise make possible,
dissemination or collection of this data, in part or in its entirety, for any
purpose, such as the transmission of unsolicited advertising and
solicitations of any kind, including spam. You further agree
not to use this data to enable high volume, automated or robotic electronic
processes designed to collect or compile this data for any purpose,
including mining this data for your own personal or commercial purposes.

Please note: the registrant of the domain name is specified
in the "registrant" section. In most cases, GoDaddy.com, LLC
is not the registrant of domain names listed in this database.

EXHIBIT B


INTERNET ARCHIVE
WayBackMachine

http://www.uffizi.com:80/

839 captures
25 Jan 1999 - 18 Mar 2018

JUN OCT DEC
07
2007 2008 2009

Go

Uffizi Gallery - Florence


Advertising Uffizi

# Uffizi.com

**Uffizi Gallery**

This website was created with the intention of providing a guide to the splendid Uffizi Gallery, primary art museum of Florence.

Please note, our guided website also indicates information, schedules and locations of other Florentine museums.

There are also virtual guides and images presented on this site to navigate through for your viewing pleasure.

Uffizi.com is a "gift" to the well know museum.
The official web site of Uffizi Museum is: www.uffizi.firenze.it

Uffizi.com is therefore the best online guide to fulfill your needs regarding our museum and the exceptional art scene in Florence.

## Uffizi
Uffizi Gallery

Uffizi Gallery
History
Rooms and Paintings
Curiosity
Timetable and Services
Online Tickets
Florence Museum
Accomodation in Florence
Versione Italiana


BOOK NOW!
UFFIZI
ONLINE
TICKETS!

uffizi.com

Top Museum: Uffizi Gallery | Accademia Gallery | Palazzo Pitti | Palazzo Vecchio | Cappelle Medicee | Gallery of Modern Art | Site Map

(c) 2007 - Indicizzazione e Ottimizzazione by Piramedia.it P.Iva 01828200038

ShinyStat™  P.viste tot  20927595   ShinyStat™  P.visite tot  110370123

http://www.uffizi.com:80/

839 captures
25 Jan 1999 - 16 Mar 2018

JUN  OCT  DEC
07
2007 2008 2009

Go

INTERNET ARCHIVE
WayBackMachine

About this capture

EXHIBIT C

*Uffizi Ticket Online Booking*      





# Uffizi Gallery

## The heart of Renaissance

Book now **UFFIZI GALLERY TICKETS** and avoid long **QUEUES** Skip the line!

☐ **BOOK NOW**

---

## UFFIZI.COM

Everyone knows that in order to visit the Uffizi Galleries have to wait long queues.
This is because only small groups of visitors can enter, to not spoil the magnificent works kept in the museum.
If you do not want to do long queues under the Tuscan's sun or the bitter cold of Florence, you can buy tickets in advance, paying only a small fee.
The tickets will be delivered by email also on your smartphone, so when you will get to Florence, you will only have to arrive a few minutes before the booked time and visit the Uffizi Gallery.

Uffizi.com is a "gift" to the well known museum

## BOOK NOW UFFIZI GALLERY TICKETS

◄        APRIL ■ 2018

| MON | TUE | WED | THU | FRI | SAT | SUN |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     |     |     | 1   |
| 2   | 3   | 4   | 5   | 6   | 7   | 8   |
| 9   | 10  | 11  | 12  | 13  | 14  | 15  |
| 16  | 17  | 18  | 19  | 20  | 21  | 22  |

we are not the official site    and we haven't got
connection to the Uffizi Gallery or other
museums.

| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
|----|----|----|----|----|----|----|
| 30 |    |    |    |    |    |    |

MAY  ●  2018  ▶

| MON | TUE | WED | THU | FRI | SAT | SUN |
|-----|-----|-----|-----|-----|-----|-----|
|     | 1   | 2   | 3   | 4   | 5   | 6   |
| 7   | 8   | 9   | 10  | 11  | 12  | 13  |
| 14  | 15  | 16  | 17  | 18  | 19  | 20  |
| 21  | 22  | 23  | 24  | 25  | 26  | 27  |
| 28  | 29  | 30  | 31  |     |     |     |
|     |     |     |     |     |     |     |

## AT A GLANCE

☐ Skip the Line
☐ Printed or mobile voucher accepted
☐ Audio Guide/Headphones available
☐ Safe Cancellation
☐ Safe date change

## SPECIAL SERVICES



❖ BOOK NOW

FROM 11.50 €  /   BUY NOW!

*From Palazzo Vecchio to Uffizi through Vasari Corridor, for the first time, 2
museums and the first part of Vasari Corridor.*

**VIEW DETAILS**☐

UFFIZI AND ACCADEMIA/   BUY NOW

*Uffizi and Accademia combo tickets*

**SAVE MONEY!**☐

## FLORENCE MUSEUMS







### *UFFIZI GALLERY*

Visit without queue!

### *ACCADEMIA GALLERY*

Discovery Michelangelo's David!

### *VAS*

Comb

## Uffizi Gallery

The Uffizi Gallery is a prominent art museum located adjacent to the Piazza della Signoria in the Historic Centre of Florence in the region of Tuscany, Italy. One of the most important Italian museums, and the most visited, it is also one of the largest and best known in the world, and holds a collection of priceless works, particularly from the period of the Italian Renaissance.

After the ruling house of Medici died out, their art collections were gifted to the city of Florence under the famous Patto di famiglia negotiated by Anna Maria Luisa, the last Medici heiress. The Uffizi is one of the first modern museums. The gallery had been open to visitors by request since the sixteenth century, and in 1765 it was officially opened to the public, formally becoming a museum in 1865.

Today, the Uffizi is one of the most popular tourist attractions of Florence. The Uffizi hosted over two million visitors in 2016, making it the most visited art gallery in Italy. In high season (particularly in July), waiting times can be up to five hours. Tickets are available on-line in advance, however, to significantly reduce the waiting time. The museum is being renovated to more than double the number of rooms used to display artwork.

## The Paintings



Adorazione dei Magi | Adorazione del Bambino | Ann...

*Adorazione dei Magi* | *Adorazione del Bambino* | *Ann...*

Albrecht Dürer | Correggio | Leona...

## What our visitors saying about their experience

☐

*BEAUTIFUL!!!*
*You are amazing -- such wonderful and speedy response and service.*
*Many thanks!.*

**- Sara**
☐☐☐☐☐

☐

*Thank you Uffizi.com for your excellent and speedy service. It is very much appreciated..*

**- Barry Cashin**
☐☐☐☐☐

# Why you should book your ticket on Uffizi.com



**SKIP THE LINE**

Avoid the long queue at the ticket office.

### PRINTED OR MOBILE VOUCHER ACCEPTED

We will send you and email with the voucher or you can just use your phone.

### AUDIO GUIDE/HEADPHONES AVAILABLE

Book you audioguide (or video guide) with your tickets

### SAFE CANCELLATION

**Our Exclusive!** If you cancel your order we will refund you (you lost just our fee)

### SAFE DATE CHANGE

**Our Exclusive!** You can change date or time (you lost just our fee)

### BEST SECURITY

All transaction are made on high protected bank system with SSL.

# A VISIT IN ROME? BOOK ONLINE ROME MUSEUMS TICKET!

### TOP MUSEUMS

Uffizi Gallery

Accademia Gallery

The Vasarian Corridor

Palazzo Vecchio

Medici Chapel

Rome Museums Tickets

### STAY WITH US

Uffizi

ShinyStat™ P.viste tot 20927641

### ADS

☐Cenacolo

☐Site Map

☐Privacy Policy

© 1998/2017 - Boxnic Anstalt c/o REAL Treuhand-und Consulting Anstalt Landstrasse 39 - 9094 Vaduz - Liechtenstein - FL00025139014 - All right reserved -Google+

EXHIBIT D



CUSTOMER SERVICES DEPARTMENT

D113

## Copia Certificada ◆ Beglaubigte Abschrift ◆ Certified Copy
## Copie Certifiée ◆ Copia Autenticata

Por el presente se certifica que el documento que se adjunta es una copia conforme del certificado de registro para la marca de la Unión Europea cuyo número y fecha de registro aparecen a continuación.

Hiermit wird bestätigt, dass die Abschrift, die diesem Beleg beigeheftet ist, eine genaue Abschrift der Eintragungsurkunde ist, die für die Unionsmarke mit der nachstehenden Eintragungsnummer und dem nachstehenden Eintragungstag ausgestellt wurde.

This is to certify that the attached document is an exact copy of the certificate of registration issued for the European Union trade mark bearing the registration number and date indicated below.

Par la présente, il est certifié que le document annexé est une copie conforme du certificat d'enregistrement délivré pour la marque de l´Union Européenne portant le numéro et la date d'enregistrement qui figurent ci-après.

Con la presente si certifica che l'allegato documento è una copia conforme del certificato di registrazione per il marchio dell´Unione Europea contrassegnato dal numero e dalla data di registrazione riportati sotto.

| Núm./Nr./No/n°/n. | Fecha/Datum/Date/Date/Data |
|---|---|
| **015655459** | **31/10/2016** |

Alicante,  08/11/2016

**Birgit Filtenborg**

Departamento de Servicios al Cliente
Hauptabteilung Kundendienstleistungen
Customer Services Department
Département «Services aux Clients»
Dipartimento Servizi ai Clienti





# UFFICIO DELL'UNIONE EUROPEA PER LA PROPRIETÀ INTELLETTUALE
## CERTIFICATO DI REGISTRAZIONE

Si rilascia il presente certificato di registrazione per il marchio dell'Unione europea identificato in appresso. I dati ad esso relativi sono stati iscritti nel Registro dei Marchi dell'Unione europea.

# EUROPEAN UNION INTELLECTUAL PROPERTY OFFICE
## CERTIFICATE OF REGISTRATION

This Certificate of Registration is hereby issued for the European Union trade mark identified below. The corresponding entries have been recorded in the Register of European Union trade marks.

www.euipo.europa.eu

Registrato / Registered 31/10/2016

No 015655459



Il Direttore esecutivo / The Executive Director

António Campinos

Copia Certificada / Beglaubigte Abschrift/ Certified Copy / Copie Certifiée / Copia Autenticata
Certificado de registro de marca de la Unión Europea / Registration certificate of European Union trade mark / Certificat d'enregistrement de marque de l'Union européenne/ Certificato di registrazione di marchio dell'Unione europea

Birgit Futterberg





**COPY**

Page 1 of 2     EUTM 015655459     Alicante, 08/11/2016



Copia Certificada / Beglaubigte Abschrift/ Certified Copy / Copie Certifiée / Copia Autenticata
Certificado de registro de marca de la Unión Europea / Eintragungsurkunde einer Unionsmarke / Registration
certificate of European Union trade mark / Certificat d'enregistrement de marque de l'Union européenne/
Certificato di registrazione di marchio dell'Unione europea



UFFICIO DELL'UNIONE EUROPEA PER LA PROPRIETÀ INTELLETTUALE

EUROPEAN UNION INTELLECTUAL PROPERTY OFFICE

| | |
|---|---|
| 210 | 015655459 |
| 220 | 13/07/2016 |
| 400 | 22/07/2016 |
| 151 | 31/10/2016 |
| 450 | 03/11/2016 |
| 186 | 13/07/2026 |
| 541 | Uffizi.com |
| 521 | 0 |
| 546 | |



591
BG - Бял; Черен; Червен; Жълт.
ES - Blanco; Negro; Rojo; Amarillo.
CS - Bílá; Černá; Červená; Žlutá.
DA - Hvid; Sort; Rød; Gul.
DE - Weiß; Schwarz; Rot; Gelb.
ET - Valge; Must; Punane; Kollane.
EL - Λευκό· Μαύρο· Κόκκινο· Κίτρινο.
EN - White; Black; Red; Yellow.
FR - Blanc; Noir; Rouge; Jaune.
IT - Bianco; Nero; Rosso; Giallo.
LV - Balts; Melns; Sarkans; Dzeltens.
LT - Balta; Juoda; Raudona; Geltona.
HR - Bijela; Crna; Crvena; Žuta.
HU - Fehér; Fekete; Vörös; Sárga.
MT - Abjad; Iswed; Aħmar; Isfar.
NL - Wit; Zwart; Rood; Geel.
PL - Biały; Czarny; Czerwony; Żółty.
PT - Branco; Preto; Vermelho; Amarelo.
RO - Alb; Negru; Roşu; Galben.
SK - Biela; Čierna; Červená; Žltá.
SL - Bela; Črna; Rdeča; Rumena.
FI - Valkoinen; Musta; Punainen; Keltainen.
SV - Vitt; Svart; Rött; Gult.

531
3.1.1
3.1.24
27.3.3

732
BoxNic Anstalt
c/o REAL Treuhand-und Landstrasse 39
9490 Vaduz
LI

270
IT EN

511
BG - 35
Рекламни, маркетингови и промоционални услуги.
ES - 35
Servicios promocionales, de marketing y publicidad.
CS - 35
Reklamní, marketingové a propagační služby.

DA - 35
Virksomhed vedrørende reklame, marketing og salgsfremstød.
DE - 35
Werbung, Marketing und Verkaufsförderung.
ET - 35
Reklaam ja turundus.
EL - 35
Διαφήμιση, ενέργειες πώλησης (μάρκετινγκ) και υπηρεσίες προώθησης.
EN - 35
Advertising, marketing and promotional services.
FR - 35
Services de publicité, de marketing et de promotion.
IT - 35
Servizi pubblicitari,Servizi pubblicitari, di marketing e promozionali di ricerche di mercato e promozionali.
LV - 35
Reklāmas, tirgvedības un preču noieta veicināšanas pakalpojumi.
LT - 35
Reklamos, rinkodaros ir pardavimų skatinimo paslaugos.
HR - 35
Usluge oglašavanja, marketinga i promidžbe.
HU - 35
Reklámozási, marketing és promóciós szolgáltatások.
MT - 35
Servizzi ta' reklamar, kummerċjaliżżazzjoni u promozzjonali.
NL - 35
Reclame, marketing en promotionele diensten.
PL - 35
Usługi reklamowe, marketingowe i promocyjne.
PT - 35
Serviços de publicidade, de marketing e de promoção.
RO - 35
Servicii de publicitate, marketing şi promovare.
SK - 35
Reklamné, marketingové a propagačné služby.
SL - 35
Oglaševalske, tržne in promocijske storitve.
FI - 35
Mainonta-, markkinointi- ja myynninedistämispalvelut.
SV - 35
Reklam, marknadsföring och säljfrämjande tjänster.

Identification Code: X53VOBAZE56PP2NGN0FRJLR2PA

Page 2 of 2



EUTM 015655459

Alicante, 08/11/2016

Birgit Fütterbog

EXHIBIT E

Find term: uffizi 

List of results:



**Trade mark name** UFFIZI TOUCH - IL MARCHIO E' COMPOSTO DA UNA SCRITTA "UFFIZI" (MINUSCOLO) E SOTTO, ALLINEATO A DESTR
A RISPETTO ALLA SCRITTA SUPERIORE, COMPARE LA SCRITTA "TOUCH" (MINUSCOLO). LA SCRITTA NEL SUO INSIEME PUO' COMPARIRE
SU SFONDO BIANCO CHE INVERSO SU SFONDO NERO O ALTRO COLORE. ESSO INOLTRE, PUO' ESSERE RIPRODOTTO COMUNQUE IN TU
TTE LE FORME, STILI, GRANDEZZE E COLORI.
**Trade mark office** IT
**Trade mark status** Registered
**Trade mark type** Other
**Applicant name** CENTRICA S.R.L.,CENTRICA SRL
**Nice class** 9,41,42,45
**Application date** 01-02-2010



**Trade mark name** UFFIZI IS IN TOUCH - IL MARCHIO E' COMPOSTO DA UNA SCRITTA "UFFIZI" (MINUSCOLO) E SOTTO, ALLINEATO A
DESTRA RISPETTO ALLA SCRITTA SUPERIORE, COMPARE LA SCRITTA "IN A TOUCH" (MINUSCOLO). LA SCRITTA NEL SUO INSIEME PUO'
COMPARIRE SU SFONDO BIANCO CHE INVERSO SU SFONDO NERO O ALTRO COLORE. ESSO INOLTRE, PUO' ESSERE RIPRODOTTO IN TU
TTE LE FORME, STILI GRANDEZZE E COLORI.
**Trade mark office** IT
**Trade mark status** Registered
**Trade mark type** Other
**Applicant name** CENTRICA S.R.L.,CENTRICA SRL
**Nice class** 9,41,42,45
**Application date** 01-02-2010



**Trade mark name** - IL MARCHIO CONSISTE NELLA PAROLA"UFFIZI";TALE PAROLA SARA'USATA IN QUALSIASI CARATTERE DI STAMPA
ED IN QUALSIASI DIMENSIONE,COMPOSIZIONE ED ALLINEAMENTO
**Trade mark office** IT
**Trade mark status** Registered
**Trade mark type** Other
**Applicant name** ZULIANI DARIO
**Nice class** 30,32,43
**Application date** 09-01-2012



**Trade mark name** - IL MARCHIO CONSISTE NELLE PAROLE "UFFIZI FLORENCE" TALI PAROLE SARANNO USATE IN QUALSIASI CARATTE
RE DI STAMPA ED IN QUALSIASI DIMENSIONE ED ALLINEAMENTO
**Trade mark office** IT
**Trade mark status** Registered
**Trade mark type** Other
**Applicant name** ZULIANI DARIO
**Nice class** 3,18,25
**Application date** 09-01-2012



**Trade mark name** - "BANDIERAI DEGLI UFFIZI" - BANDIERA SVENTOLANTE CON GIGLIO AL CENTRO, CERCHIATA, CON SCRITTA NEL L
ATO INFERIORE "BANDIERAI DEGLI UFFIZI" CON CAPOLETTERA MAIUSCOLO. DI QUALSIASI DIMENSIONE E/O COLORE.
**Trade mark office** IT
**Trade mark status** Registered
**Trade mark type** Other
**Applicant name** ASSOCIAZIONE SPORTIVA DILETTANTISTICA AMICI DEI BANDIERAI DEGLI UFFICI
**Nice class** 25,41
**Application date** 02-03-2011



**Trade mark name** LA TRIBUNA DEGLI UFFIZI.TESORI DELL ARTE A PORTATA DI MANO
**Trade mark office** IT
**Trade mark status** Registered
**Trade mark type** Other
**Applicant name** PARALLELO SAS DI FINESCHI FILIPPO
**Nice class** 16,35,38,41,42
**Application date** 15-05-2014



**Trade mark name** LE VIE DEGLI UFFIZI - "LE VIE DEGLI UFFIZI". QUALSIASI CARATTERE,QUALSIASI FORMA O DIMENSIONE,QUALSIA
SI COLORE COMPRESO IL BIANCO E NERO
**Trade mark office** IT
**Trade mark status** Registered
**Trade mark type** Other
**Applicant name** PARALLELA S.A.S. DI FILIPPO FINESCHI
**Nice class** 16,35,38,41,42
**Application date** 20-11-2012

**Trade mark name** UFFIZI - SCRITTA IN CARATTERI MAIUSCOLI
**Trade mark office** IT
**Trade mark status** Registered
**Trade mark type** Other
**Applicant name** UFFIZI S.N.C. DI LIONELLO CECCOTTIE C.
**Nice class** 25
**Application date** 23-10-1991



**Trade mark name** "UFFIZI ESPAÇO CONTEMPORANEO"
**Trade mark office** BR
**Trade mark status** Registered
**Trade mark type** Combined
**Applicant name** Z & Z COMÉRCIO DE OBRAS DE ARTE E ARTIGOS PARA DECORAÇÃO LTDA.
**Nice class** 35
**Application date** 02-10-2007



**Trade mark name** FRIENDS OF THE UFFIZI GALLERY
**Trade mark office** WO
**Trade mark status** Registered
**Trade mark type** Figurative
**Applicant name** Associazione Amici degli Uffizi onlus
**Nice class** 16,36,37,41
**Application date** 21-10-2015



**Trade mark name** FRIENDS OF THE UFFIZI GALLERY
**Trade mark office** WO
**Trade mark status** Registered
**Trade mark type** Figurative
**Applicant name** Associazione Amici degli Uffizi onlus
**Nice class** 16,36,37,41
**Application date** 21-10-2015



**Trade mark name** Uffizi.com
**Trade mark office** EM
**Trade mark status** Registered
**Trade mark type** Figurative
**Applicant name** BoxNic Anstalt
**Nice class** 35
**Application date** 13-07-2016



**Trade mark name** LE GALLERIE DEGLI UFFIZI
**Trade mark office** EM
**Trade mark status** Registered
**Trade mark type** Figurative
**Applicant name** Gallerie degli Uffizi
**Nice class** 3,4,6,14,16,18,19,20,21,24,25,27,28,29,30,35,36,37,39,41,42,43
**Application date** 30-08-2017



**Trade mark name** UFFIZI GALLERY AMICI degli UFFIZI
**Trade mark office** WO
**Trade mark status** Registered
**Trade mark type** Figurative
**Applicant name** Associazione Amici degli Uffizi onlus
**Nice class** 16,18,25
**Application date** 30-03-2006



**Trade mark name** UFFIZI GALLERY AMICI DEGLI UFFIZI
**Trade mark office** IT
**Trade mark status** Registered
**Trade mark type** Other
**Applicant name** ASSOCIAZIONE AMICI DEGLI UFFIZI ONLUS
**Nice class** 16,18,25
**Application date** 24-03-2006

Christian uffizi

**Trade mark name** Christian uffizi
**Trade mark office** KR
**Trade mark status** Registered
**Trade mark type** Other
**Applicant name** 안성철
**Nice class** 18,25
**Application date** 26-11-2003



**Trade mark name** UFFIZI.
**Trade mark office** CO
**Trade mark status** Registered
**Trade mark type** Combined
**Applicant name** SUMMIT COMERCIO IMPORTACAO E EXPORTACAO LTDA.
**Nice class** 8
**Application date** 26-02-2008



**Trade mark name** UFFIZI.
**Trade mark office** CO
**Trade mark status** Registered
**Trade mark type** Combined
**Applicant name** SUMMIT COMERCIO IMPORTACAO E EXPORTACAO LTDA.
**Nice class** 16
**Application date** 26-02-2008



**Trade mark name** TRIAS UFFIZI
**Trade mark office** BX
**Trade mark status** Registered
**Trade mark type** Word
**Applicant name** Trias Digitaal B.V.
**Nice class** 9,35,42
**Application date** 30-11-2010



**Trade mark name** UFFIZI CENTER
**Trade mark office** IT
**Trade mark status** Registered
**Trade mark type** Other
**Applicant name** EDIZIONE PROPERTY SPA
**Nice class** 3,5,8,9,10,11,12,14,15,16,18,20,21,22,23,24,25,26,27,28,29,30,31,32,33,34,35,36,38,39,40,41,42
**Application date** 19-10-2000



**Trade mark name** UFFIZI
**Trade mark office** BR
**Trade mark status** Registered
**Trade mark type** Combined
**Applicant name** SUMMIT COMÉRCIO IMPORTAÇÃO E EXPORTAÇÃO LTDA
**Nice class** 16
**Application date** 19-05-2005



**Trade mark name** UFFIZI
**Trade mark office** BR
**Trade mark status** Registered
**Trade mark type** Combined
**Applicant name** RESTAURANTE UFFIZI LTDA
**Nice class** 43
**Application date** 11-11-2005



**Trade mark name** UFFIZI
**Trade mark office** BR
**Trade mark status** Registered
**Trade mark type** Combined
**Applicant name** RL SISTEMAS DE HIGIENE LTDA
**Nice class** 21
**Application date** 13-12-2007



**Trade mark name** UFFIZI
**Trade mark office** MX
**Trade mark status** Registered
**Trade mark type** Combined
**Applicant name** SUMMIT COMÉRCIO IMPORTAÇÃO E EXPORTAÇÃO LTDA.
**Nice class** 8
**Application date** 14-11-2007



**Trade mark name** uffizi
**Trade mark office** KR
**Trade mark status** Registered
**Trade mark type** General mark
**Applicant name** 안성철
**Nice class** 18
**Application date** 05-11-2012



**Trade mark name** uffizi
**Trade mark office** KR
**Trade mark status** Registered
**Trade mark type** General mark
**Applicant name** 안성철
**Nice class** 25
**Application date** 05-11-2012



**Trade mark name** UFFIZI
**Trade mark office** MX
**Trade mark status** Registered
**Trade mark type** Combined
**Applicant name** MARIA DE LA PAZ ZULOAGA VILLASE?OR
**Nice class** 16
**Application date** 07-10-2004



**Trade mark name** UFFIZI
**Trade mark office** AR
**Trade mark status** Registered
**Trade mark type** Combined
**Applicant name** SUMMIT COMERCIO IMPORTACAO E EXPORTACAO LTDA. 100,00%
**Nice class** 8
**Application date** 29-10-2007



**Trade mark name** UFFIZI
**Trade mark office** AR
**Trade mark status** Registered
**Trade mark type** Combined
**Applicant name** MASTRANGELO, JOSE AMADEO 100,00%
**Nice class** 37
**Application date** 10-12-2012



**Trade mark name** UFFIZI
**Trade mark office** AR
**Trade mark status** Registered
**Trade mark type** Combined
**Applicant name** SUMMIT COMERCIO IMPORTACAO E EXPORTACAO LTDA. 100,00%
**Nice class** 16
**Application date** 29-10-2007



**Trade mark name** UFFIZI
**Trade mark office** MY
**Trade mark status** Registered
**Trade mark type** Stylized characters
**Applicant name** TRINITY TEXTILES LIMITED
**Nice class** 18
**Application date** 08-12-2006



**Trade mark name** UFFIZI
**Trade mark office** MY
**Trade mark status** Registered
**Trade mark type** Stylized characters
**Applicant name** TRINITY TEXTILES LIMITED
**Nice class** 35
**Application date** 08-12-2006



**Trade mark name** UFFIZI
**Trade mark office** MY
**Trade mark status** Registered
**Trade mark type** Stylized characters
**Applicant name** TRINITY TEXTILES LIMITED
**Nice class** 9
**Application date** 08-12-2006



**Trade mark name** UFFIZI
**Trade mark office** MY
**Trade mark status** Registered
**Trade mark type** Stylized characters
**Applicant name** TRINITY TEXTILES LIMITED
**Nice class** 25
**Application date** 08-12-2006



**Trade mark name** UFFIZI
**Trade mark office** MY
**Trade mark status** Registered
**Trade mark type** Stylized characters
**Applicant name** TRINITY TEXTILES LIMITED
**Nice class** 14
**Application date** 08-12-2006

EXHIBIT F

| From: | Domain Disputes |
| To: | ga-uff.legale@beniculturali.it |
| Cc: | Domain Disputes |
| Subject: | Online submission of a domain name case (2018.02.09 14:38:54) |
| Date: | Friday, February 09, 2018 2:39:16 PM |
| Attachments: | Certified copy of trademark GU.zip |

The following online submission has been received via the Arbitration and Mediation Center's English web site.

The WIPO Arbitration and Mediation Center has received your online submission of the Complaint, as follows:

Submitted by: Eike Schmidt
Email: ga-uff.legale@beniculturali.it
(to receive the electronic confirmation of the form's submission)
Date: 09-Feb-2018

The Complaint text that we have registered is reproduced below. If you have not already saved the Complaint, you may use the below text to save and print the Complaint.

In this connection, please note that, in accordance with Paragraphs 2 and 3 of the ICANN Rules for Uniform Domain Name Dispute Resolution Policy ( http://www.wipo.int/amc/en/domains/rules/ ), which states that, any written communication to Respondent provided for under these Rules shall be made electronically via the Internet (a record of its transmission being available).

Annexes may be filed separately by email sent to domain.disputes@wipo.int, with the disputed domain name to which each pertains clearly indicated in the subject line. If you wish to file multiple Annexes, use of the WIPO model Complaint and simple email filing process described at http://www.wipo.int/amc/en/domains/complainant/ is recommended.

We recommend you consult http://www.wipo.int/amc/en/domains/complainant/ for detailed Filing Guidelines.

Further information about the case, including a case reference number, will be communicated to you by email shortly. Any further questions about the procedure may be directed to domain.disputes@wipo.int.

Sincerely,
WIPO Arbitration and Mediation Center

**Complaint Transmittal Coversheet:**

Below is a Complaint that has been filed against you with the World Intellectual Property Organization (WIPO) Arbitration and Mediation Center (the Center) pursuant to the Uniform Domain Name Dispute Resolution Policy (the Policy) as approved by the Internet Corporation for Assigned Names and Numbers (ICANN) on October 24, 1999, the Rules for Uniform Domain Name Dispute Resolution Policy (the Rules) as approved by ICANN on September 28, 2013, and in effect as of July 31, 2015, and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the Supplemental Rules) in effect as of July 31, 2015.

The Policy is incorporated by reference into your Registration Agreement with the Registrar(s) of your domain name(s), in accordance with which you are required to submit to a mandatory administrative proceeding in the event that a third party (a Complainant) submits a complaint to a dispute resolution service provider, such as the Center, concerning a domain name that you have registered. You will find the name and contact details of the Complainant, as well as the domain name(s) that is/are the subject of the Complaint in the document that accompanies this Coversheet.

Once the Center has checked the Complaint to determine that it satisfies the formal requirements of the Policy, the Rules and the Supplemental Rules, it will forward an official copy of the Complaint, including annexes, to you

by email as well as sending you hardcopy Written Notice by post and/or facsimile, as the case may be. You will then have 20 calendar days from the date of Commencement within which to submit a Response to the Complaint in accordance with the Rules and Supplemental Rules to the Center and the Complainant. You may represent yourself or seek the assistance of legal counsel to represent you in the administrative proceeding.

- The ICANN Policy ( http://www.wipo.int/amc/en/domains/rules/ )
- The ICANN Rules ( http://www.wipo.int/amc/en/domains/rules/ )
- The Supplemental Rules ( http://www.wipo.int/amc/en/domains/rules/ ), as well as other information concerning the resolution of domain name disputes ( http://www.wipo.int/amc/en/domains/ )
- A model Response ( http://www.wipo.int/amc/en/domains/respondent/index.html )

Alternatively, you may contact the Center to obtain any of the above documents. The Center can be contacted in Geneva, Switzerland by telephone at +41 22 338 8247, by fax at +41 22 740 3700 or by e-mail at domain.disputes@wipo.int.

You are kindly requested to contact the Center to provide the contact details to which you would like (a) the official version of the Complaint and (b) other communications in the administrative proceeding to be sent.

A copy of this Complaint has also been sent to the Registrar(s) with which the domain name(s) that is/are the subject of the Complaint is/are registered.

By submitting this Complaint to the Center the Complainant hereby agrees to abide and be bound by the provisions of the Policy, Rules and Supplemental Rules.

---

**Before the:**

**World Intellectual Property Organization
Arbitration and Mediation Center**

| Complainant | |
|---|---|
| Name | Gallerie degli Uffizi |
| Address | Piazzale degli Uffizi, 6, 50122 Firenze (FI), Italy |
| **Respondent** | |
| Name | BoxNic Anstalt |
| Address | Registrant Organization: BoxNic Anstalt Registrant Street: Landstrasse 39 Registrant City: Vaduz Registrant State/Province: Not Applicable Registrant Postal Code: 08017 Registrant Country: LI Registrant Phone: +423.000000 Registrant Fax: +423.000000 Registrant Email: domain@boxnic.com |
| **Disputed Domain Name[s]** | Uffizi.com |

---

**COMPLAINT
(Rules, para. 3(b))**

**I. Introduction**

[1.] This Complaint is hereby submitted for decision in accordance with the Uniform Domain Name Dispute Resolution Policy (the **Policy**), approved by the Internet Corporation for Assigned Names and Numbers (**ICANN**) on October 24, 1999, the Rules for Uniform Domain Name Dispute Resolution Policy (the **Rules**), approved by

ICANN on September 28, 2013, and in effect as of July 31, 2015, and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the **Supplemental Rules**) in effect as of July 31, 2015.

## II. The Parties

### A. The Complainant
### (Rules, Paragraphs 3(b)(ii) and (iii))

| [2.] The Complainant in this administrative proceeding is | Gallerie degli Uffizi |
|---|---|

[3.] The Complainant's contact details are:

| Address | Piazzale degli Uffizi, 6, 50122 Firenze (FI), Italy |
|---|---|
| Telephone | +39 0552388715 |
| Fax | |
| Email | ga-uff.legale@beniculturali.it |

[4.] The Complainant's authorized representative in this administrative proceeding is:

Eike Schmidt

[5.] The Complainant's preferred method of communications directed to the Complainant in this administrative proceeding is:

**Electronic-only material**

| Method | email |
|---|---|
| Address | ga-uff.legale@beniculturali.it |
| Contact | Eike Schmidt |

Material including hardcopy **(where applicable)**

| Method | |
|---|---|
| Address | |
| Fax | |
| Contact | |

### B. The Respondent
### (Rules, Paragraph 3(b)(v))

[6.] According to the Complainant, the Respondent in this administrative proceeding is BoxNic AnstaltCopies of the printout of the database search *[es]* conducted on 6.2.2018 from an e-mail sent by domain.disputes@wipo.int are provided as Annex .

[7.] All information known to the Complainant regarding how to contact the Respondent is as follows:

Registrant Organization: BoxNic Anstalt Registrant Street: Landstrasse 39 Registrant City: Vaduz Registrant State/Province: Not Applicable Registrant Postal Code: 08017 Registrant Country: LI Registrant Phone: +423.000000 Registrant Fax: +423.000000 Registrant Email: domain@boxnic.com

---

### III. The Domain Name*[s]* and Registrar*[s]*
### (Rules, Paragraphs 3(b)(vi) and (vii))

[8.] This dispute concerns the domain name*[s]* identified below:

Uffizi.com

[9.] The registrar*[s]* with which the domain name*[s]* *[is/are]* registered *[is/are]*:

Registrar: GoDaddy.com, LLC Register IANA ID:146

---

### IV. Language of Proceedings
### (Rules, Paragraphs 11(a), 11(b))

[10.] To the best of the Complainant's knowledge, the language of the Registration Agreement is english, a copy of which is provided as Annex to this Complaint. The Complaint has been submitted in / [pursuant to an agreement between the parties stipulating that should be the language of the administrative proceeding, a copy of which is provided as Annex to this Complaint.] / [The Complainant requests that the language of proceedings be and provides the following supporting arguments and evidence.]

---

### V. Jurisdictional Basis for the Administrative Proceeding
### (Rules, Paragraphs 3(a), 3(b)(xv))

[11.] This dispute is properly within the scope of the Policy and the Administrative Panel has jurisdiction to decide the dispute. The registration agreement, pursuant to which the domain name*[s]* that *[is/are]* the subject of this Complaint *[is/are]* registered, incorporates the Policy.

A true and correct copy of the domain name dispute policy that applies to the domain name*[s]* in question is provided as Annex to this Complaint.

---

### VI. Factual and Legal Grounds
### (Policy, Paragraphs 4(a), (b), (c); Rules, Paragraph 3)

[12.] This Complaint is based on the following grounds:

**A. The domain name*[s]* *[is/are]* identical or confusingly similar to a trademark or service mark in which the Complainant has rights;**

(Policy, Paragraph 4(a)(i), Rules, Paragraphs 3(b)(viii), (b)(ix)(1))

The Uffizi Galleries (also doing business under Uffizi and Uffizi Gallery) is one of the most popular museums in the world. For a further protection against any kind of abuse, the Uffizi Galleries registered the trademark "GU" for the Uffizi Galleries (Trademark no. 017158114, filed on 30.08.2017 (annex 1). So the registration of the trademark guarantees the owner from any improper use of it, and prevents the risk of confusion for the public deriving from the use by third parties of trademarks and domain names similar to those of own ownership. In this case, pursuant to article 3.6 of Rules for Uniform Domain Name Dispute Resolution Policy, if the domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights, the claimed

domain name has to be reallocated to the complainant. Consequently, given that the challenged domain name "Uffizi" is identical to the domain name assigned to the Respondent, uffizi.com, it has to be transferred to the complainant,

**B. The Respondent has no rights or legitimate interests in respect of the domain name*[s]*;**

(Policy, Paragraphs 4(a)(ii), 4(c), Rules, Paragraph 3(b)(ix)(2))

Considering abovementioned paragraph a), and considering the respondant has no rights or legitimate interests in respect of the domain name is the subject of the complaint. Uffizi Galleries is the only one subject entitled to the exclusive use of the domain name "Uffizi"; the domain name is a distinctive sign and the brand of the Uffizi Galleries is a trademark which guarantees protection to the owner from the improper use by third parties.

**C. The domain name*[s] [was/were]* registered and *[is/are]* being used in bad faith.**

(Policy, Paragraphs 4(a)(iii), 4(b); Rules, Paragraph 3(b)(ix)(3))

Uniforma Domain Name Despute Resolution Policy, at point 4, lett. b), regarding bad faith use of the domain name, provides "by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or of a product or service on your web site or location". In this case, uffizi.com, by selling on line tickets for the museums belonging to the Uffizi Galleries at higher prices, confuses customers and generates lost profits, with the considerable economic damage to the Institute.

---

## VII. Remedies Requested
### (Rules, Paragraph 3(b)(x)), Policy, Paragraph 4(i)

[13.] In accordance with Paragraph 4(i) of the Policy, for the reasons described in Section V above, the Complainant requests the Administrative Panel appointed in this administrative proceeding issue a decision that the disputed domain name(s) be transferred to the Complainant

---

## VIII. Administrative Panel
### (Rules, Paragraph 3(b)(iv))

[14.] The Complainant elects to have the dispute decided by a Single member Administrative panel

---

## IX. Mutual Jurisdiction
### (Rules, Paragraph 3(b)(xiii))

[15.] In accordance with Paragraph 3(b)(xii) of the Rules, the Complainant will submit, with respect to any challenges that may be made by the Respondent to a decision by the Administrative Panel to transfer or cancel the domain name*[s]* that *[is/are]* the subject of this Complaint, to the jurisdiction of the courts at

(a)  the location of the principal office of the concerned registrar."

---

## X. Other Legal Proceedings
### (Rules, Paragraph 3(b)(xi))

[16.]

---

**XI. Communications**
**(Rules, Paragraph 3(b); Supplemental Rules, Paragraphs 3, 4, 12)**

[17.] This Complaint has been submitted to the Center in complete electronic form (including all annexes).

[18.] A copy of this Complaint, uffizi.com been sent or transmitted to the concerned registrar[s] on BoxNic Anstalt in accordance with paragraph 4(c) of the Supplemental Rules.

---

**XII. Payment**
**(Rules, Paragraph 19; Supplemental Rules, Annex D)**

[19.] As required by the Rules and Supplemental Rules, payment in the amount of USD 1.500 has been made by Credit card.

---

**XIII. Certification**
**(Rules, Paragraph 3(b)(xiv), Supplemental Rules, Paragraph 14)**

[20.] The Complainant agrees that its claims and remedies concerning the registration of the domain name*[s]*, the dispute, or the dispute's resolution shall be solely against the domain name holder and waives all such claims and remedies against (a) the WIPO Arbitration and Mediation Center and Panelists, except in the case of deliberate wrongdoing, (b) the concerned registrar*[s]*, (c) the registry administrator, (d) the Internet Corporation for Assigned Names and Numbers, as well as their directors, officers, employees, and agents.

[21.] The Complainant certifies that the information contained in this Complaint is to the best of the Complainant's knowledge complete and accurate, that this Complaint is not being presented for any improper purpose, such as to harass, and that the assertions in this Complaint are warranted under the Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

---

**XIV. Annexures**
**(Rules, Paragraph 3(b)(xiv), Supplemental Rules, Paragraph 12, Annex E)**

[22.] The Rules provide that a complaint or response, including any annexes, shall be submitted electronically. Under the Supplemental Rules, there is a file size limit of 10MB (ten megabytes) for any one attachment, with an overall limit for all submitted materials of no more than 50MB (fifty megabytes).

[23.] In particular, Paragraph 12 and Annex E of the Supplemental Rules provides that, other than by prior arrangement with the Center, the size of any individual file (such as a document in Word, PDF or Excel format) transmitted to the Center in connection with any UDRP proceeding shall itself be no larger than 10MB. When larger amounts of data need to be transmitted, larger files can be "split" into a number of separate files or documents each no larger than 10MB. The total size of a complaint or response (including any annexes) filed in relation to a UDRP dispute shall not exceed 50MB, other than in exceptional circumstances (including in the case of pleadings concerning a large number of disputed domain names) where previously arranged with the Center.

Certified copy of trademark GU.zip (7290365 bytes)

Respectfully submitted,

| | |
|---|---|
| Name | Eike Schmidt |
| Email<br>(provided for purposes of receiving electronic confirmation of this form's submission) | ga-uff.legale@beniculturali.it |
| Date | 09-Feb-2018 |
| Electronic Signature | Eike Schmidt |

# EXHIBIT G

*Before the:*

**WORLD INTELLECTUAL PROPERTY ORGANIZATION
ARBITRATION AND MEDIATION CENTER**

| | |
|---|---|
| *Gallerie degli Uffizi*<br>*Piazzale degli Uffizi 6,*<br>*50122 Firenze (FI), Italy*<br> (**Complainant**) | **Case No:** *D2018-0166* |
| -v- | |
| *BoxNic Anstalt*<br>*c/o REAL Treuhand-und Consulting*<br>*Anstalt*<br>*Landstrasse 39*<br>*9094 Vaduz, Liechtenstein*<br>(**Respondent**) | **Disputed Domain Name:** *uffizi.com* |

**RESPONSE**
(Rules, Paragraph 5)

**I.  Introduction**

[1.]  On February 13, 2018, the Respondent received a Notification of Complaint and Commencement of Administrative Proceeding from the WIPO Arbitration and Mediation Center (the **Center**) by email informing the Respondent that an administrative proceeding had been commenced by the Complainant in accordance with the Uniform Domain Name Dispute Resolution Policy (the **Policy**), approved by the Internet Corporation for Assigned Names and Numbers (**ICANN**) on October 24, 1999, the Rules for Uniform Domain Name Dispute Resolution Policy (the **Rules**) approved by ICANN on September 28, 2013, and in effect as of July 31, 2015, and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the **Supplemental Rules**).   The Center set down March 5, 2018 as the last day for the submission of a Response by the Respondent.

## II.  **Respondent's Contact Details**
(Rules, Paragraphs 5(c)(ii) and (iii))

[2.]   The Respondent's contact details are:

     Name:     Herrand Trauttmansdorff

     Address:   Landstrasse 39

                9490 Vaduz (Liechtenstein)

     Telephone: +423 2320202

     Fax:       +423 232 0204

     Email:     boxnic@gmail.com

[3.]   The Respondent's authorized representative in this administrative proceeding is:

     Name:     Enzo Fogliani

     Address:   Corso Elvezia, 4

                6900 Lugano (Switzerland)

     Telephone: +41 77 9616975

     Fax:       +41 91 2280343

     Email:     fog@hispeed.ch

[4.]   The Respondent's preferred method of communications directed to the Respondent in this administrative proceeding is:

     <u>Electronic-only material</u>

     Method:   email

     Address:  <u>fog@hispeed.ch</u>

     Contact:   Enzo Fogliani

     <u>Material including hardcopy (where applicable)</u>

     Method:   fax

     Fax:       +41 91 2280343

     Contact:   Enzo Fogliani

### III.  **Response to Statements and Allegations Made in Complaint**
(Policy, Paragraphs 4(a), (b), (c); Rules, Paragraph 5(c)(i))

[5.]   The Respondent hereby responds to the statements and allegations in the Complaint and respectfully requests the Administrative Panel to deny the remedies requested by the Complainant.

### A.   **Whether the domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;**
(Policy, Paragraph 4(a)(i))

The uffizi.com domain name does not create any confusion with any of the Complainant's trademarks or service marks.

On one hand, the Complainant bases its appeal on a trademark (namely, GU – Le Gallerie degli Uffizi) which was registered more than a year after the Respondent's brand *uffizi.com* (please see Annex 1, registration of  the Respondent's Trade mark and Annex 2, Registration of the Complainant's trade mark).

On the other hand, "*uffizi*" is an Italian common word, being the plural of "*uffizio*" an old-fashioned version of the word "*ufficio*" (office) (please see Annexes 3, 4 and 5). The name "Gallerie degli Uffizi" derives from the fact that they are located in the same building where, in the sixteenth century, the famous Medici family that governed Florence at the time had established the city's administrative offices seat (uffizi).

This is also demonstrated by translations into other languages (e.g.: Galerie des Offices in French; Galerìa de los Oficios in Spanish; cfr. Annexes 6 e 7)

Since "uffizi" is a common word, it can be subject of an exclusive right only when joined to and in conjunction with other words, in order to attribute it sufficiently distinctive character.

This is shown by the fact that 76 of brands which contain within their name the word "uffizi" have been registered as such (please see Annex 8).

Thus, the Complainant has no exclusive right on the sole word "*Uffizi*", but rather on "*Gallerie degli Uffizi*". Nor is there any evidence to the assertion that it would be "*doing business under Uffizi and Uffizi Galleries*".

Therefore it has absolutely no rights to *uffizi.com*, which corresponds to the trademark registered by the Respondent on October 31, 2016 (please see Annex 1).

**B.** **Whether the Respondent has rights or legitimate interests in respect of the domain name;**
(Policy, Paragraph 4(a)(ii))

The Respondent is entitled to the uffizi.com domain name, as it corresponds exactly to the registered trademark on October 31, 2016 (please see Annex 1). The *uffizi.com* brand, being composed of two words, possesses strong distinctiveness.

This mark is completely valid and has never been challenged by Complainant, which registered the mark on which its Complaint is based only on January 25, 2018, i.e. over a year later (please see Annex 2).

*Uffizi.com* brand has also been known on the internet since 2007. Since 2008 *uffizi.com* website has been selling agency tickets for museums and cultural and sporting events (please see Annex 9, capture of Uffizi.com website on September 13, 2008). Among the museum tickets sold there are obviously also the Gallerie degli Uffizi, but not only those; tickets are also sold for the Museums of Rome, the Colosseum, and so forth (please see Annex 10).

To avoid any misunderstanding, on the home page of the Respondent's website is (and has always been) expressly stated: "*We are not the official site and we have not got connection to the Uffizi Gallery or other museums*" (please see Annex 11).

The Respondent, therefore, has been acting in utmost good faith, and in such good faith has been selling online tickets for museums and cultural events for over 10 years now (please see Annex 9).

In contrast, (as shown by archive.org, which collects images of the websites over time) Complainant only acquired the uffizi.it domain (which previously dealt with investments in the works of art; please see Annex 12, capture of uffizi.it website on 3 September 2011) and started online ticket sales in 2013 (please see Annex 13, capture of uffizi.it website on 22 October 2013); that is, more than 5 years after the start of the uffizi.com's activity.

In addition to this, with its business activity the Respondent does not in any way damages the business of the Uffizi Galleries, but instead it increases it, because, by selling the tickets which it buys from the Complainant or its sellers, it increases the number of the visitors of the museum.

In fact, while Uffizi.it website is offered only in Italian and English, Uffizi.com is aimed at visitors-speakers of 6 different languages (English, French, German, Spanish, Italian and Portuguese); which in turn increases the number of visitors-online purchasers of museum tickets.

The online sale of tickets in the Uffizi gallery is perfectly legal. This is demonstrated by the fact that tickets sold through uffizi.com allow visitors to enter the museum, and that there are many other websites that sell the same tickets for access to the Uffizi Gallery (Please see Annexes 14, 15, 16, 17, 18, 19, 20 and 21, Websites selling tickets for the Gallerie degli Uffizi).

**C.**   **Whether the domain name has been registered and is being used in bad faith.**

(Policy, Paragraph 4(a)(iii))

Complainant states that: "*By selling online tickets for the museums belonging to the Uffizi Galleries at higher prices, it confuses customers and generates lost profits, with considerable economic damage to the Institute*". This is absolutely not true.

As previously shown, to avoid any confusion, on the home page of the Respondent's website it is clearly indicated from the beginning of their business activity that: "*We are not the official site and we have not got connection to the Uffizi Gallery or other museums*". (please see Annex 11).

The ticket sales page clearly states the cost of the ticket and the amount of commission due to the Respondent for the service rendered (please see Annex 22). The Respondent does not sell tickets at the higher price, but at the same price (please see Annex 23), plus rightfully charging commission, clearly indicated, for the services provided.

This excludes any possibility of Complainant's sustaining loss of profit, as the Uffizi Galleries collect exactly the same amount of money for tickets sold by Respondent and the amounts they collect for tickets sold online from their own website (please see Annexes 22 and 23).

There is therefore no element of bad faith in the registration of the uffizi.com domain.

It is further emphasized in this regard that:

 a) Respondent had started selling tickets online 5 years before Complainant started the same online sales service themselves on its website;

 b) The Respondent is the owner of the registered trademark exactly corresponding to the domain name, registered before the Complainant registered the one upon which it bases its complaint (a trademark which, moreover, does not contain only the word "uffizi");

5

c) "*The Complainant and the Respondent are not competitors and the domain name was not registered by the Respondent primarily to disrupt the Complainant's business*"; on the contrary, the uffizi.com ticket sales business increases the profits of the Complainant, by generating new visitors.

d) The Respondent has not created a "*likelihood of confusion with the Complainant's mark of the source, sponsorship, affiliation, or endorsement of the Respondent's website or location or of the product or service on the Respondent's website or location*", since it has always expressly stated the opposite on his own website (please see Annex 11).

## V.  Administrative Panel
(Rules, Paragraphs 5(c)(iv) and (c)(v) and Paragraph 6;  Supplemental Rules, Paragraph 7)

[7.]   The Respondent elects to have the dispute decided by a single-member Administrative Panel.

## VI.  Other Legal Proceedings
(Rules, Paragraph 5(c)(vi))

[8. ]   There are no other legal proceedings that have been commenced or terminated in connection with or relating to the domain name that is the subject of the Complaint

## VII.  Communications
(Rules, paras. 2(b), 5(c)(vii); Supplemental Rules, Paragraphs 3, 7, 12)

[9.]   A copy of this Response has been transmitted to the Complainant on March 5, 2018 in electronic form.

[10.]  This Response is submitted to the Center in electronic form, including any annexes, in the appropriate format.

## VIII.  Payment
(Rules, Paragraph 5(d); Supplemental Rules, Annex D)

[11.]  No payment should be born by the Respondent.

6

## IX.  Certification
(Rules, Paragraph 5(c)(viii), Supplemental Rules, Paragraph 15)

[12.] The Respondent agrees that, except in respect of deliberate wrongdoing, an Administrative Panel, the World Intellectual Property Organization and the Center shall not be liable to a party, a concerned registrar or ICANN for any act or omission in connection with the administrative proceeding.

[13.] The Respondent certifies that the information contained in this Response is to the best of the Respondent's knowledge complete and accurate, that this Response is not being presented for any improper purpose, such as to harass, and that the assertions in this Response are warranted under the Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

Respectfully submitted,

Enzo Fogliani

Date: March 5, 2018.

## X.  List of Annexes
[(Rules, Paragraph 5(c), Supplemental Rules, Paragraph 12, Annex E)

Annex 1: Trade mark registration "Uffizi.com"

https://euipo.europa.eu/eSearch/#basic/1+1+1+1/100+100+100+100/uffizi.com

Annex 2: Trade mark registration "GU – Le Gallerie degli Uffizi"

https://euipo.europa.eu/eSearch/#basic/1+1+1+1/100+100+100+100/gallerie%20degli%20uffizi

Annex 3: Etimology of the word "offizio" on Dizionario etimologico

https://www.etimo.it/?cmd=id&id=18966&md=413dec24e3165a78b070fd8922e584da

Annex 4: Meaning of the word "offizio" on Vocabolario Treccani

https://www.treccani.it/vocabolario/uffizio/

Annex 5: Meaning of the word "offizio" by Dizionario italiano

https://www.dizionario-italiano.it/dizionario-italiano.php?parola=uffizio

Annex 6: Webpage of Italia.it – Galerie des Offices

http://www.italia.it/fr/idees-de-voyage/art-et-histoire/florence-la-magie-de-la-renaissance-italienne-revit-a-la-galerie-des-offices.html

Annex 7: Webpage of EcuRed.cu – Galeria de los Oficios

https://www.ecured.cu/Galería_de_los_Oficios

Annex 8: Trade Mark search on TMView

https://www.tmdn.org/tmview/bookmark?q=tm%3Auffizi&lang=en#

Annex 9: Capture of Uffizi.com website on September 13, 2008

https://web.archive.org/web/20080913120304/http://www.uffizi.com:80/

Annex 10: Webpage of uffizi.com on Museums of Rome

http://roma.uffizi.com

Annex 11: Home page of uffizi.com website

http://www.uffizi.com

Annex 12: Capture of Uffizi.it website on September 3, 2011

https://web.archive.org/web/20110903063443/http://www.uffizi.it:80/

Annex 13: Capture of Uffizi.it website on October 22, 2013

https://web.archive.org/web/20131022195130/http://www.uffizi.it:80/

Annex 14: Webpage of Musement.com

https://www.musement.com/it/firenze/biglietti-salta-fila-per-la-galleria-degli-uffizi-536/

Annex 15: Webpage of Ticketone.it

http://www.ticketone.it/biglietti.html?affiliate=ITT&includeOnlybookable=false&xtcr=1&xtnp=1&erid=965122&doc=artistPages/tickets&action=tickets&xtmc=uffizi&fun=artist&language=en

Annex 16: Webpage of Ticketsflorence.com

https://www.ticketsflorence.com/en/museums-tickets-florence-uffizi-accademia/uffizi-gallery-florence-tickets

Annex 17: Webpage of Viator.com

https://www.viator.com/tours/Florence/Skip-the-Line-Florence-Uffizi-Gallery-Tour/d519-2428M2

Annex 18: Webpage of Florence-tickets.com

https://www.florence-tickets.com/florence/uffizi-gallery/uffizi-gallery-tickets

Annex 19: Webpage of Getyourguide.com

https://www.getyourguide.com/florence-l32/uffizi-gallery-entry-with-reserved-tickets-t57076/?utm_force=0

Annex 20: Webpage of Selectitaly.com

https://selectitaly.com/tickets/museums/uffizi-gallery-tickets-florence/27

Annex 21: Webpage of Tiqet.com

https://www.tiqets.com/en/florence-c71854/uffizi-gallery-priority-entrance-p974170

Annex 22: Example of online booking on Uffizi.com

http://www.uffizi.com/online-ticket-booking-uffizi-gallery.asp?data=07-04-2018

Annex 21: Example of online booking on Uffizi.it

https://webshop.b-ticket.com/webshop/webticket/shoppingcart?tokenName=CSRFTOKEN

# EXHIBIT H



**ARBITRATION
AND
MEDIATION CENTER**

**WIPO**
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

---

## ADMINISTRATIVE PANEL DECISION
Gallerie degli Uffizi v. Registration Private, Domains By Proxy LLC / BoxNic Anstalt
Case No. D2018-0166

### 1. The Parties

The Complainant is Gallerie degli Uffizi of Florence, Italy, internally represented.

The Respondent is Registration Private, Domains By Proxy LLC of Scottsdale, Arizona, United States of America / BoxNic Anstalt of Vaduz, Liechtenstein, represented by Enzo Fogliani, Switzerland.

### 2. The Domain Name and Registrar

The disputed domain name <uffizi.com> is registered with GoDaddy.com, LLC (the "Registrar").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on January 3, 2018. The amended Complaint was filed with the Center on January 25, 2018.  On January 26, 2018, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain name.  On January 29, 2018, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain name which differed from the named Respondent and contact information in the Complaint.  The Center sent an email communication to the Complainant on February 6, 2018, providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint.  The Complainant filed a second amended Complaint on February 9, 2018.

The Center verified that the Complaint together with the first and second amended Complaints satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondent of the Complaint, and the proceedings commenced on February 13, 2018.  In accordance with the Rules, paragraph 5, the due date for Response was March 5, 2018.  The Response was filed with the Center on March 5, 2018.

The Center appointed Andrew D. S. Lothian as the sole panelist in this matter on March 19, 2018.  The Panel finds that it was properly constituted.  The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.


**4. Factual Background**

The Complainant is Gallerie degli Uffizi, Florence, also known as Uffizi Galleries, doing business as "Uffizi" or "Uffizi Gallery".  The Complainant describes itself as one of the most popular museums in the world.  The Complainant is the owner of European Union registered trademark no. 17158114 for a figurative mark consisting of a "GU" device together with the words LE GALLERIE DEGLI UFFIZI, filed on August 30, 2017 and registered on January 25, 2018 in multiple use classes.

The Respondent is an entity with an address in Lichtenstein.  The disputed domain name was created on December 18, 1998.  The Respondent is the owner of European Union registered trademark no. 15655459 for a figurative mark consisting of the words "Uffizi.com" together with a red and gold fleur-de-lis device, filed on July 13, 2016 and registered on October 31, 2016 in use class 35.

A screenshot of a page on the website associated with the disputed domain name dated September 13, 2008 shows a top banner stating "Online Booking Uffizi Gallery tickets" and a prominent left hand banner featuring a fleur-de-lis design below which are the words "Uffizi / Uffizi Gallery".  The site describes how to reserve "Uffizi tickets", adding "Official web site of Uffizi Museum is:  www.uffizi.firenze.it."

A screenshot of the homepage for the website associated with the disputed domain name dated February 24, 2018 shows a header stating "Uffizi Ticket Online Booking", with a first menu item after the Respondent's logo and figurative mark headed "UFFIZI GALLERY" followed by items such as "BUY TICKETS" and "FLORENCE MUSEUMS".  Below an image banner are the words "Book now UFFIZI TICKETS and avoid long QUEUES! Skip the line!".  In a center column, a prominent calendar system invites the user to select dates for the purchase of tickets.  In a left hand column the following statement is written:

"Everyone knows that in order to visit the Uffizi have to wait long queues [*sic*].  This is because only small groups of visitors can enter, to not spoil the magnificent works kept in the museum.  If you do not want to do long queues under the Tuscan's sun or the bitter cold of Florence, you can buy tickets in advance, paying only a small fee.  The tickets will be delivered by email also on your smartphone, so when you will get to Florence, you will only have to arrive a few minutes before the booked time and visit the Uffizi Gallery.

Uffizi.com is a 'gift' to the well known museum we are not the official site and we haven't got connection to the Uffizi Gallery or other museums."

The Respondent's said website goes on to describe the Complainant's gallery/museum as "[o]ne of the most important Italian museums, and the most visited, it is also one of the largest and best known in the world".


**5. Parties' Contentions**

**A. Complainant**

The Complainant contends that the disputed domain name is identical or confusingly similar to a trademark in which the Complainant has rights;  that the Respondent has no rights or legitimate interests in the disputed domain name;  and that the disputed domain name was registered and is being used in bad faith.

The Complainant asserts that it is one of the most popular museums in the world and notes that it also does business under the names "Uffizi" and "Uffizi Gallery".  The Complainant explains that it registered the

trademark described in the factual background section above for a further protection against abuses. The Complainant submits that its trademark registration protects it against improper third party use of such mark and prevents the risk of confusion for the public arising from third party use of trademarks and domain names similar to those of the Complainant.

The Complainant asserts that where the disputed domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights, the disputed domain name should be transferred to the Complainant. The Complainant points out that the name "Uffizi" is identical to the disputed domain name and asserts that the disputed domain name should therefore be transferred to the Complainant.

The Complainant states that the Respondent has no rights or legitimate interests in respect of the disputed domain name and contends that the Complainant should be entitled to its exclusive use. The Complainant asserts that the disputed domain name is a distinctive sign and reiterates that the Complainant's brand is a trademark which guarantees protection to the owner from improper use by third parties.

With regard to registration and use of the disputed domain name in bad faith, the Complainant notes that paragraph 4(b)(iv) of the Policy provides that "by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or of a product or service on your web site or location". The Complainant contends that the website associated with the disputed domain name confuses customers and causes lost profits for the Complainant via the online sale of higher priced tickets for the Complainant's museums. The Complainant adds that this gives rise to considerable economic damage to the Complainant.

**B. Respondent**

The Respondent requests the Panel to deny the remedy sought by the Complainant.

The Respondent denies that the disputed domain name creates any confusion with the Complainant's trademark, noting that such mark was registered more than a year after the Respondent's trademark was registered. The Respondent also notes that "uffizi" is an Italian common word being the plural of "uffizio", an old-fashioned version of the word "ufficio" meaning "office". The Respondent states that the Complainant's name "Gallerie degli Uffizi" derives from the fact that it is located in the same building where in the 16th century the famous Medici family who governed Florence at the time had established the city's administrative offices or "uffizi". The Respondent provides copies of two third-party websites showing a translation of the "offices" component of the Complainant's name into French and Spanish respectively, namely "Galerie des Offices" and "Galeria de los Oficios".

The Respondent asserts that, being a common word, "uffizi" can be the subject of an exclusive right only when joined to and in conjunction with other words in order to attribute a sufficiently distinctive character. The Respondent produces evidence that 76 trademarks containing the term "uffizi" have been registered and asserts that the Complainant thus has no exclusive right to the word on its own but only as "Gallerie degli Uffizi". The Respondent submits that there is no evidence to the assertion that the Complainant is doing business under the names "Uffizi" and "Uffizi Galleries".

The Respondent asserts that it has rights in the disputed domain name corresponding exactly to the Respondent's own registered trademark and asserts that this possesses strong distinctiveness due to the presence of the ".com" suffix. The Respondent notes that its mark has never been challenged by the Complainant. The Respondent adds that the disputed domain name has been known on the Internet since 2007 and that since 2008 it has been selling agency tickets for museums and cultural and sporting events. The Respondent acknowledges that among such tickets are those for the Complainant's museum but besides these there are tickets available for other attractions such as the Museums of Rome and the Colosseum. The Respondent adds that its site has always stated expressly "We are not the official site and we have not got connection to the Uffizi Gallery or other museums".

The Respondent contrasts its alleged good faith activities over the preceding decade with the activities of the Complainant, noting that the Complainant only acquired its present domain name <uffizi.it> and began to sell tickets online in 2013, more than five years after the commencement of the activity at the disputed domain name.  The Respondent states that it is not damaging the business of the Complainant but is enlarging it by purchasing tickets from the Complainant or its resellers, thus expanding the number of visitors to the museum and increasing the Complainant's sales.  The Respondent adds that the Complainant's website is offered only in Italian and English while the Respondent's site is aimed at visitors and speakers of six different languages which also serves to increase ticket sales.  The Respondent submits that such ticket sales are perfectly legal and that such tickets allow visitors to enter the Complainant's museum.  The Respondent adds that there are many other websites which sell the same tickets for access to the Complainant's gallery and produces multiple examples.

The Respondent denies that it is confusing customers or selling the Complainant's tickets at higher prices.  The Respondent reiterates that its site carries a disclaimer and that its ticket sales page clearly states the cost of the ticket and amount of commission due to the Respondent for the service rendered.  The Respondent asserts that the Complainant does not lose any profits as the Complainant collects the same amount for tickets sold by the Respondent as those sold online from the Complainant's website.

## 6. Discussion and Findings

To succeed, the Complainant must demonstrate that all of the elements enumerated in paragraph 4(a) of the Policy have been satisfied:

(i)      the disputed domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;

(ii)     the Respondent has no rights or legitimate interests in respect of the disputed domain name;  and

(iii)    the disputed domain name has been registered and is being used in bad faith.

## A. Preliminary Matter:  Language of the Administrative Proceeding

The Complainant states in the Complaint as originally filed:  "Uffizi Gallery is one of the most popular museums in the world, located in Florence, Italy;  so the Italian Language would most probably be familiar for carrying on the procedure".  The Complaint was however submitted in English.  The language of the registration agreement for the disputed domain name is English.  The Respondent is located in Liechtenstein and has communicated with the Center in English.  The Center wrote to the Parties on February 8, 2018 noting these facts and stating that in accordance with paragraph 11(a) of the Rules and subject to the Panel's discretion it would proceed with English as the language of the administrative proceeding.  In light of the Center's notification, the Complainant appears to have deleted its original comment from the second amended Complaint, also submitted in English.  Nevertheless, the Panel will briefly address the language issue for the sake of completeness.

Paragraph 11(a) of the Rules states that unless otherwise agreed by the Parties or specified otherwise in the registration agreement, the language of the administrative proceeding shall be the language of the registration agreement, subject to the authority of the Panel to determine otherwise, having regard to the circumstances of the administrative proceeding.

In the present case, it is clear to the Panel that both of the Parties are capable of understanding and communicating in English, this being the language used in both Complaint and Response, notwithstanding the Complainant's original request.  The Panel therefore sees no reason for departing from the usual "default" language, noting that no scenario such as those described in section 4.5.1 of the WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Third Edition ("WIPO Overview 3.0") is present in the circumstances of this case.

**B. Identical or Confusingly Similar**

In order for the Complainant to make out its case under this element of the Policy, it must show that it has rights in a trademark and that the disputed domain name is identical or confusingly similar to that trademark. The mark on which the Complainant expressly relies for this purpose is its European Union registered trademark described in the factual background section above.  This mark is figurative in nature and so it is convenient to consider the terms of section 1.10 of the WIPO Overview 3.0 which indicates that, in the case of such a mark, panel assessment of identity or confusing similarity involves comparing the alphanumeric domain name and the textual components of the relevant mark, noting that to the extent that design or figurative/stylized elements would be incapable of representation in domain names, these elements are largely disregarded for the purposes of assessing identity or confusing similarity under paragraph 4(a)(i) of the Policy.  The section goes on to note that trademark registrations with design elements would *prima facie* satisfy the requirement that the complainant show "rights in a mark" for further assessment as to confusing similarity, adding a caveat that where design elements comprise the dominant portion of the relevant mark such that they effectively overtake the textual elements in prominence, or where the trademark registration entirely disclaims the textual elements, panels may find that the complainant's trademark registration is insufficient by itself to support standing under the Policy.

With these observations in mind, the Panel notes that the only design elements in the Complainant's mark are the stylized "GU" logo.  The remainder of the mark, LE GALLERIE DEGLI UFFIZI, is in textual form and may usefully be compared to the disputed domain name.  The Panel disregards the generic Top-Level Domain ("gTLD") ".com" for the purposes of comparison as is customary in cases under the Policy on the grounds that it is required for technical reasons only.  This leads the Panel to a relatively straightforward side-by-side comparison of the domain name and textual components of the relevant trademark to assess whether the mark is recognizable within the disputed domain name (see section 1.7 of the WIPO Overview 3.0) namely in this case between "uffizi" and LE GALLERIE DEGLI UFFIZI.  Where at least a dominant feature of the relevant mark is recognizable in the domain name, the domain name will normally be considered confusingly similar to that mark for the purposes of UDRP standing.  Here, the Panel finds the word "UFFIZI" to be the dominant portion of the mark, in that the mark may be translated as "The Uffizi Galleries" such that all of the focus of the additional words is upon the "Uffizi" component which provides specificity as to the galleries concerned.

The Respondent's submissions as to whether there is any confusion between the Complainant's mark and the disputed domain name are not relevant to the first element test of identity or confusing similarity.  The fact that the disputed domain name may consist of a common word would not, of itself, prevent a finding of confusing similarity provided that, as here, the dominant portion of the mark may be readily identified within the disputed domain name on the basis of the comparison discussed above.  Similarly, to the extent that the Respondent is taking issue with the fact that the Complainant's registered mark post-dates the registration date of the disputed domain name, the Panel notes that while this may be relevant to the analysis of the second and third elements of the Policy it is not relevant to the first element.  What is required is that a complainant demonstrates that it has UDRP-relevant rights at the date when it files the complaint in order to be able to show standing for the purposes of the administrative proceeding (see section 1.1.3 of the WIPO Overview 3.0 which observes that where a domain name may have been registered before a complainant has acquired trademark rights this does not by itself preclude a complainant's standing to file a UDRP case nor a panel's finding of identity or confusing similarity under the first element).

While the above analysis demonstrates that the Complainant has met the requirements of paragraph 4(a)(i) of the Policy, it is convenient at this point to consider those of the Complainant's submissions which appear relevant to the question of unregistered trademark rights which it may possess in the word or mark UFFIZI.  Section 1.3 of the WIPO Overview 3.0 states that in light of the availability of trademark-like protection under certain national legal doctrines (*e.g.*, unfair competition or passing-off) and considerations of parity, where acquired distinctiveness/secondary meaning is demonstrated in a particular UDRP case, unregistered rights have been found to support standing to proceed with a UDRP case including where the complainant is based in a civil law jurisdiction.

The Complaint itself provides no evidential support for its averments that it does business under the UFFIZI mark and is one of the most popular museums in the world. By themselves, these averments would not go far enough to establish unregistered or common law rights in a mark. Section 1.3 of the WIPO Overview 3.0 indicates that a complainant's alleged unregistered or common law mark must have become a distinctive identifier which consumers associate with the complainant's goods and/or services, and that relevant evidence should disclose, for example, (i) the duration and nature of use of the mark, (ii) the amount of sales under the mark, (iii) the nature and extent of advertising using the mark, (iv) the degree of actual public (*e.g.*, consumer, industry, media) recognition, and (v) consumer surveys. The section also notes that conclusory allegations of such rights, even if undisputed in the particular case, would not normally suffice to show secondary meaning, adding that in cases involving unregistered or common law marks comprised of descriptive terms which are not inherently distinctive there is a greater onus on the complainant to present evidence of acquired distinctiveness/secondary meaning.

This is not however the end of the matter in this particular case which has the relatively unusual feature that the Respondent has provided extensive evidence which is strongly supportive both of the Complainant's assertions and of the notion that the term UFFIZI has acquired a secondary meaning denoting the Complainant and its gallery/museum. In particular, the Respondent produces screenshots from no less than ten independent websites which attest to the worldwide fame of the Complainant's museum, originally constructed as the "Uffizi palace" in 1560, opened to visitors on request during the 16th century and officially opened to the public as a museum in 1765. These websites provide ample evidence of the fact that the Complainant is known both by tour operators and by the public (several of whom who left corresponding reviews on those websites) as "the Uffizi" as much if not more so than it may be known by its full name in Italian as found in the Complainant's registered trademark. This evidence further shows that the capitalized term "Uffizi" is used adjectivally in phrases such as "Uffizi tours", "Uffizi tickets" and, even on the Respondent's own website, as "Uffizi Ticket Online Booking". "The Uffizi", as the Complainant's gallery/museum therefore appears to be widely known in short form, is demonstrably popular with the general public given that the websites produced by the Respondent appear to be selling priority tickets while noting in some cases, as does the Respondent's site, that there are very long waits in line to be expected for those who do not pre-book such access.

The Respondent notes that the "Uffizi" element of the Complainant's name is derived from the word "uffizi" being an archaic form of "uffici" meaning "offices". This is corroborated by those of the websites produced by the Respondent which offer a description of the origin and history of the Complainant's name. The Respondent goes on to extrapolate that this means that the Complainant can claim no distinctiveness and thus presumably that no secondary meaning could be established in the term on its own. This argument holds no water. First, it is worthy of note that the word "uffizi" is archaic and there is no evidence before the Panel that it remains in common or widespread use in this older form. Secondly, to the extent that this word might have been regarded as not inherently distinctive, the material produced by the Respondent has more than discharged the criteria as outlined in section 1.3 of the WIPO Overview 3.0 to present evidence of acquired distinctiveness/secondary meaning. It is worth noting that some of the websites choose to de-capitalize the word "uffizi" when explaining the "offices" origin of the name and to capitalize it as "Uffizi" when referring to the Complainant's mark in phrases such as "your Uffizi tour". Furthermore, in reaching its Decision, it has been impossible for the Panel overlook the fact that its own built-in spell-checker within its word processing software appears to be set by default to automatically correct any attempt to type a lower case instance of the word "uffizi" to the capitalized form thus adding to the notion that such secondary meaning has somewhat eclipsed the original term.

In the Panel's experience the extraordinary level of evidential support and corroboration for the Complainant's position as found in the annexes to the Response far exceeds that which would be expected of the typical complainant seeking to establish secondary meaning in a name or mark and encompasses multiple examples of both consumer and industry recognition for the term. The Panel observes that the Complainant took a considerable risk in evidential terms by leaving matters to the Respondent to make its case out for it on the question of its rights in the UFFIZI name or mark. Indeed, had the Respondent remained silent, the Complainant's claim regarding this term may have even failed for lack of evidence. That said, the Panel is required to weigh all of the evidence before it in the balance, regardless from where it

originates, and in those circumstances finds it established that the Complainant has rights in an unregistered mark for the term UFFIZI due to the extent of the mark's recognition and the length of time that the Complainant and its predecessors have used it in connection with the eponymous gallery/museum, dating back at least to 1765 when it was first opened to the public.  Given that the Respondent's evidence from multiple independent sources describes the centuries old history of the Complainant's activities linked to the UFFIZI mark and praises the eponymous institution as "world-renowned", "one of the first modern museums in the world", "one of the most important museums in Italy", and "the earliest museum in modern Europe" which "displays the greatest paintings from every age", the Panel is convinced on the balance of probabilities of the existence of such rights and the fact that these long pre-date the registration of the disputed domain name.  While, as noted above, this is not essential to the decision on the first element, it is of crucial importance to the second and third elements to which the Panel will now turn.

In the above circumstances, the Panel finds that the requirements of paragraph 4(a)(i) of the Policy have been satisfied.

**C. Rights or Legitimate Interests**

Paragraph 4(c) of the Policy lists several ways in which the Respondent may demonstrate rights or legitimate interests in the disputed domain name:

"Any of the following circumstances, in particular but without limitation, if found by the Panel to be proved based on its evaluation of all evidence presented, shall demonstrate your rights or legitimate interests to the domain name for purposes of paragraph 4(a)(ii):

(i) before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods or services;  or

(ii) you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights;  or

(iii) you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue".

The consensus of previous decisions under the Policy is that a complainant may establish this element by making out a *prima facie* case, not rebutted by the respondent, that the respondent has no rights or legitimate interests in a domain name.  Where the panel finds that a complainant has made out such a *prima facie* case, the burden of production shifts to the respondent to bring forward evidence of such rights or legitimate interests.

In the present case, the Panel finds that the requisite *prima facie* case has been made out by the Complainant, albeit marginally, on the basis of its submissions that it is one of the most popular museums in the world and that the Respondent is trading off the Complainant's name by selling tickets to the Complainant's museum which is confusing its customers.  The Panel makes the reasonable inference from these submissions that the Complainant has granted no permission, licence or otherwise for its UFFIZI mark to be used for such purpose in commerce by the Respondent, and that the Complainant did not invite or permit the Respondent to acquire a domain name that is confusingly similar to such mark.

In these circumstances, the burden of production shifts to the Respondent to bring forward evidence of its rights or legitimate interests in the disputed domain name.  The essence of the Respondent's submissions on this topic are that it has rights in the disputed domain name in consequence of its registered trademark, by virtue of the fact that it has been known on the Internet under such name since 2007 and has been selling agency tickets since 2008, and on the basis that the disputed domain name is a dictionary word with the implication being that it is making legitimate fair use of such term.  These submissions correspond approximately to a claim of use of the disputed domain name before notice of the dispute in connection with

a *bona fide* offering of goods or services in terms of paragraph 4(c)(i) of the Policy and a claim of having been commonly known by the disputed domain name and under the corresponding registered trademark, being a variant of the provisions of paragraph 4(c)(ii) of the Policy.

Dealing first with paragraph 4(c)(i) of the Policy, the Respondent provides supportive evidence that it has been trading in tickets since 2008 using the disputed domain name by way of a screenshot of the associated website dated September 13, 2008.  The problem for the Respondent's case, however, is that this screenshot demonstrates what in the Panel's view is a use of the disputed domain name which could easily be confused with the Complainant's mark by visitors.  The exclusive use of the word "uffizi" in the disputed domain name provides, in itself, an attraction for the Respondent's business on the basis that, by the use of this exact term alone, consumers may wrongly assume that they are visiting an official or at least an authorized website of the Complainant.  Such confusion is not immediately dispelled by the website itself which was then headed "Online Booking Uffizi Gallery tickets".  It is only by reading the central panel rather carefully that visitors would be able to identify the fact that the website also lists the URL of the Complainant's original website and indicates that reservations can be made by telephoning what the Panel assumes to be the Complainant's booking line.  Directly below this advice, however, in bold text, is the wording "We suggest to booking Uffizi Tickets:  this means you don't have to wait in long queues at the entrance".  The site goes on "If you want, it's possible to booking tickets online filling the online form powered and provided by <u>WAF</u> [*hyperlinked term*].  Prices included also reservation fee and may be more expensive that directly purchased at the ticket office".  In the right hand column of the site are banner advertisements under the title "Advertising Uffizi" for tourist accommodation and a resort.  Hyperlinks at the foot of the page appear to relate to the Complainant's museum and other attractions.

The Panel considers that the use of the disputed domain name in 2008 could not be described in Policy terms as a *bona fide* offering of goods or services.  It is apparent to the Panel that the Respondent was well aware of the name of the Complainant's gallery and was taking full advantage of the fact that it controlled the disputed domain name, likely to be confusing in and of itself insofar as it is the exact term by which the Complainant is commonly known, to promote online ticket sales which by its own admission on the website were for the Complainant's attraction and were more expensive than those offered by the Complainant.  Although the focus of the site was on such tickets, the Respondent also promoted third-party services using the attractive force of the Complainant's UFFIZI mark.  The Panel finds it difficult to imagine how the Respondent could conceive of this particular use as a *bona fide* offering of goods or services given the use of the Complainant's UFFIZI mark in both as the disputed domain name itself and prominently on the associated website.

While the above analysis discusses the position in 2008, as noted by section 2.11 of the WIPO Overview 3.0, panels tend to assess claimed respondent rights or legitimate interests in the present with a view to the circumstances prevailing at the time of the filing of the complaint.  The Panel therefore turns to consider the use of the Respondent's website in the most recent screenshot provided by the Respondent which is dated February 24, 2018.  This is headed "Uffizi Ticket Online Booking" with the first two hyperlinks in a top row menu of "UFFIZI GALLERY / BUY TICKETS".  Below this is a full width image of classical artwork with a large text prominent overlay of the words "Uffizi Gallery / The heart of Renaissance".  Under this image there are three columns, the first of which contains the wording described in the factual background section above and the second of which provides a diary system for selecting dates under the header "BOOK NOW UFFIZI TICKETS".  In the Panel's opinion, the Respondent's use of the disputed domain name in its present form is misleading as to source or sponsorship and the Respondent's suggestion on the website that it is a "gift" to the Complainant is particularly disingenuous.  The Panel notes that a form of disclaimer is present, but this is not particularly prominent and could easily be overlooked by consumers using the site to book tickets to the Complainant's museum/gallery.

The Response points out that the Respondent is selling the Complainant's own tickets at the same face value in support of its claim to rights and legitimate interests.  While there is no express assertion that the Respondent is thereby making nominative fair use of the UFFIZI mark in the disputed domain name, the Panel will consider briefly whether the Respondent may be treated as a reseller of the Complainant and may thereby be able to establish a legitimate interest in the disputed domain name.  Section 2.8.1 of the WIPO

Overview 3.0 describes the "Oki Data test" which derives from *Oki Data Americas, Inc. v. ASD, Inc.*, WIPO Case No. D2001-0903 ("*Oki Data*") and which recognizes that resellers using a domain name containing the complainant's trademark to undertake sales related to the complainant's goods or services may be making a *bona fide* offering of goods and services and thus have a legitimate interest in such domain name.  Before applying the test, the Panel notes that a claim to alleged nominative fair use encounters an initial difficulty in the present case.  As provided in section 2.8.2 of the WIPO Overview 3.0, cases applying the test usually involve a domain name comprising a trademark plus a descriptive term.  In the present case, the Complainant's mark is not accompanied by any descriptive terms such as, for example, UFFIZI + "tickets".  Section 2.8.2 of the WIPO Overview 3.0 goes on to add that the risk of misrepresentation has led panels to find that a respondent lacks rights or legitimate interests in cases involving a domain name identical to the complainant's trademark, as is the case here.

Even if the cumulative requirements of *Oki Data*, *supra*, are applied to the facts of this case for the sake of completeness, notwithstanding the issue identified in section 2.8.2 of the WIPO Overview 3.0, it may be seen that the Respondent's use of the disputed domain name does not pass the test.  The first requirement is that the Respondent must actually be offering the goods or services at issue, which is the case here.  However, the Respondent's website fails the second requirement which is that such site should sell only the trademarked goods or services.  Furthermore, there is some doubt in the Panel's mind that the Respondent meets the third requirement which is that the site must accurately and prominently disclose the registrant's relationship with the trademark holder.  The site's unofficial status is noted but this is found at the foot of a sidebar and, as indicated above, could hardly be described as prominent.  The final requirement of the test is that the Respondent must not try to "corner the market" in domain names that reflect the trademark and this is not of particular relevance to the present case.

The Panel turns to consider the Respondent's case regarding its own registered trademark and the suggestion that it has been commonly known by the disputed domain name.  Section 2.12.2 of the WIPO Overview 3.0 notes that the existence of a respondent trademark does not automatically confer rights or legitimate interests on such respondent, adding that panels have generally declined to find respondent rights or legitimate interests in a domain name on the basis of a corresponding trademark registration where the overall circumstances demonstrate that such trademark was obtained primarily to circumvent the application of the UDRP or otherwise to prevent the complainant's exercise of its rights.  The section cautions that absent evidence of such circumstances indicating pretext, however, panels have been reluctant to reject a respondent trademark registration out of hand.

Nevertheless, as the panel in *BECA Inc. v. CanAm Health Source, Inc.*, WIPO Case No. D2004-0298 notes:

"When considering the question of 'rights or legitimate interests' under paragraph 4(a)(ii), a panel can, in an appropriate case, question the legitimacy of a trademark relied upon by a respondent.  The mere fact that a trademark has been applied for or obtained by a respondent is not an absolute bar to a complainant succeeding under the UDRP.  In a case where, in the opinion of the panel, a trademark has not been sought or obtained for a legitimate or *bona fide* purpose, but merely in order to bolster a domain name registration, the trademark can be disregarded."

In the case of *Aukro Ukraine LLC v. PrivacyYes.com, Igor Spodin*, WIPO Case No. D2013-1568, the panel questioned the legitimacy of the respondent's trademark on the above basis.  Such trademark was a figurative mark containing the words "VCENE com".  This mark thus corresponded to <vcene.com> which was the domain name in respect of which the complaint had been brought.  The panel noted that the trademark had been registered some three years after the complainant registered its own trademark and began trading while the dominant and distinctive element of the respondent's trademark was phonetically identical and visually confusingly similar to the complainant's trademark.  The respondent in that case did not deny that it was aware of the complainant and its business when it acquired the domain name.  The panel noted:

"In these circumstances, it appears likely to the Panel that the Respondent has applied for and has registered its trademark in attempt to secure to himself trademark rights in the term 'vcene' and thus to

legitimize its ownership of the disputed domain name and circumvent the application of the Policy, while being well aware of the Complainant, its goodwill in its trademark and website and its established position on the Ukrainian market for almost three years. In this situation, the Panel is not prepared to accept that the Respondent's trademark was applied for and registered in good faith and that the conduct of the Respondent gives rise to rights or legitimate interests of the Respondent under the Policy in the disputed domain name."

The Panel in the present case is faced with broadly analogous circumstances. The Respondent has obtained a registered trademark for a figurative mark which corresponds to the disputed domain name. It was registered many years after the Complainant began to use the name and mark UFFIZI. The Respondent has not denied that it was aware of the Complainant when it acquired the disputed domain name, nor could it have done so credibly to any extent given that its intent appears to have been to use both the disputed domain name and trademark for a purpose which is intimately connected with the Complainant and its rights, namely to offer what it describes as "Uffizi Tickets" for sale. In other words, both the disputed domain name and the Respondent's registered trademark featuring the disputed domain name have only ever been used by the Respondent for the purpose of the associated website. Given that the Respondent's disclaimer is not particularly prominent, such website effectively constitutes a misrepresentation that the Respondent is either the Complainant itself or at least is a specially authorized agent of the Complainant. A trademark which appears to have been registered and used exclusively for such a purpose cannot in the mind of the Panel confer rights or legitimate interests upon the Respondent. The Panel notes in passing that to the extent that the Response implies that the Respondent has been commonly known by the disputed domain name, no evidence along the lines anticipated by section 2.3 of the WIPO Overview 3.0 has been put forward to support such a contention.

Turning to the Respondent's argument that the term "uffizi" is a dictionary word, the Panel notes that section 2.10 of the WIPO Overview 3.0 provides that merely registering a domain name comprised of a dictionary word does not by itself automatically confer rights or legitimate interests upon a respondent. The section goes on to add that in order to find rights or legitimate interests in a domain name based on its dictionary meaning, the domain name should be genuinely used, or at least demonstrably intended for use, in connection with the relied-upon dictionary meaning and not to trade off third party trademark rights. In these circumstances, the Respondent's argument can be swiftly disposed of. There is no evidence before the Panel that the Respondent has ever used or intended to use the disputed domain name in connection with the archaic meaning of the word "offices". On the contrary, the Respondent openly uses the disputed domain name to sell tickets to the Complainant's gallery/museum, thus trading off third party trademark rights. While, as the Respondent points out, third parties have evidently adopted the use of the term in their own trademarks, this in no way weakens or dilutes the Complainant's rights in its mark and it is this mark and this mark only to which the Respondent's use of UFFIZI in the disputed domain name is targeted.

To put matters another way, the Panel accepts the Respondent's contention that the Complainant's use of the name "Uffizi" has its origins in a dictionary term. In the Panel's opinion, however, for the reasons outlined in connection with the first element above, the Complainant's UFFIZI mark now functions as an "arbitrary" trademark (see section 2.10 of the WIPO Overview 3.0) in that the word itself is being used in connection with but does not relate to the goods or services, being gallery/museum tours, which the Complainant provides. The Respondent uses the mark for exactly the same goods or services and not to refer to "offices".

Section 2.10.1 of the WIPO Overview 3.0 provides a similar example of a hypothetical respondent which might have a legitimate interest in the domain name <orange.com> if it uses this for a website providing information about the fruit or the color orange, whereas it would not have such a legitimate interest if the corresponding website is aimed at goods or services that target a third party trademark which uses the same term as a trademark in a non-dictionary sense (in this example:  Orange, well-known *inter alia* for telecommunications and Internet services).

In short, there is no obvious connection between the word "uffizi" and the sale of tickets for museums and cultural events which is apparent to the Panel, other than through the Complainant's UFFIZI name and mark.

It is worth adding that one of the two dictionary definitions presented by the Respondent specifically mentions the Complainant's name, which it describes as a "traditional designation", thus itself demonstrating the longevity of the Complainant's use of the word and its intimate association therewith.

In all of the above circumstances, the Panel considers that the Respondent has failed to meet the Complainant's *prima facie* case by way of rebuttal and accordingly that the Respondent has no rights or legitimate interests in the disputed domain name.  The Panel therefore finds that the requirements of paragraph 4(a)(ii) of the Policy have been satisfied.

**D. Registered and Used in Bad Faith**

Paragraph 4(b) of the Policy provides four, non-exclusive, circumstances that, if found by the Panel to be present, shall be evidence of the registration and use of a domain name in bad faith:

"(i) circumstances indicating that you have registered or you have acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of your documented out of pocket costs directly related to the domain name;  or

(ii) you have registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that you have engaged in a pattern of such conduct;  or

(iii) you have registered the domain name primarily for the purpose of disrupting the business of a competitor;  or

(iv) by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other online location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or location or of a product or service on your web site or location".

There are two elements to the inquiry under this part of the Policy.  These are conjunctive.  The Panel must first determine whether the Respondent registered or acquired the disputed domain name in bad faith.  Secondly, the Panel must decide whether the disputed domain name is being used in bad faith.  For the Complainant to prevail, both elements of bad faith registration and use must be found to be present.

Before the Panel can consider the element of registration in bad faith, it must give consideration to the timing of the Respondent's acquisition of an interest in the disputed domain name.  The Response is silent on this matter.  This is surprising given that it is a matter uniquely in the Respondent's knowledge.  According to the WhoIs record, the disputed domain name was created in 1998.  However, all that the Respondent says on this topic is that the disputed domain name "has been known on the Internet since 2007" and that since 2008 it has been used to sell agency tickets for museums and cultural and sporting events.

The earliest screenshot produced by the Respondent of the website associated with the disputed domain name dates from 2008.  It is taken from the Internet Archive "Wayback Machine".  A later screenshot of the same site dated February 24, 2018, also from the "Wayback Machine", features a header which states that over 800 such historic screenshots are available dating as far back as January 25, 1999.  Why did the Respondent provide nothing earlier than 2008, when such evidence is clearly available on the "Wayback Machine"?  The Panel does not know the answer to that question.

The Panel considers that the omission of any earlier history of the disputed domain name or its associated website is significant and is intentional rather than accidental on the part of the Respondent.  It is not a matter which the Panel could imagine being easily overlooked, given that the Respondent is represented by legal counsel and has provided a careful account of its activities from 2008 onwards with a supporting

reference to the "Wayback Machine".  Had there been any prior use of the disputed domain name by the Respondent between the date of its original creation in 1998 and the described first use of 2008 which was supportive of the notion that it was registered or acquired in good faith, the Panel would have expected to find this in the Response, all the more so when it is evident that the Respondent is well aware that additional historic data is available in the location from which it has already retrieved evidence.  In all of these circumstances and in the absence of evidence to the contrary, the Panel considers it reasonable to infer that the disputed domain name was acquired by the Respondent in 2007-2008.  In any event, it ultimately does not matter;  moreover the Panel is left to assess the Respondent's conduct on the above-noted evidence before it.  See in this respect WIPO Overview 3.0, section 3.2.1.

On the basis of the evidence before it, the Panel is satisfied that the Respondent's intention in acquiring the disputed domain name was to use it for the purpose for which it is currently used, namely to sell tickets to the Respondent's gallery/museum alongside related third-party services such as tickets to other attractions, tours and hotel accommodation.  It is therefore self-evident that it was acquired with knowledge of and intent to target the Complainant's longstanding UFFIZI name and mark.  This could neither be considered a good faith purpose for the registration nor a good faith use of the disputed domain name.

The Respondent seeks to mitigate its conduct by arguing that tickets to other attractions are available on its website and/or that third parties also sell such tickets.  In contrast to the third-party websites, however, the Respondent is using the UFFIZI mark without adornment or qualification in its domain name to draw large numbers of visitors to its site via its attractive force.  Again in contrast to such third-party sites, visitors to the Respondent's site are likely to be confused by the content as to whether the Respondent is the Complainant itself or whether there is a commercial connection with the Complainant or endorsement by it.  This results from the prominent use of the UFFIZI mark not only as the disputed domain name, which has drawn the visitor in, but also in multiple headings such as "BOOK NOW UFFIZI TICKETS" in connection with what is evidently the Complainant's gallery/museum.

The Respondent argues that the presence on its website of a disclaimer serves to dispel any potential confusion.  Section 3.7 of the WIPO Overview 3.0 deals with the question of how a disclaimer on a webpage to which the disputed domain name resolves may impact a panel's assessment of bad faith, noting that where a respondent appears to otherwise have a right or legitimate interest in a disputed domain name, a clear and sufficiently prominent disclaimer would lend support to circumstances suggesting its good faith.  An example cited is the *Oki Data* test if the respondent is legitimately providing goods and services related to the complainant's mark only.  The section notes that this can support a finding that the respondent has undertaken reasonable steps to avoid unfairly passing itself off as related to the complainant, or to otherwise confuse users.  The section goes on to note that on the other hand, where the overall circumstances of the case point to the respondent's bad faith, the mere existence of a disclaimer cannot cure this and indeed may be considered an admission by the respondent that users may be confused.

In the present case, the Panel takes the view that the disclaimer on the Respondent's website is insufficiently prominent.  Furthermore, it amounts to an admission that users may otherwise be confused.  As noted above, there are no circumstances conferring a right or legitimate interest upon the Respondent such as those arising from the *Oki Data* test.  The statement in the disclaimer that the website is "a gift" does nothing to dispel the confusion already generated.  In terms of prominence, the website title, imaging and extensive use of the UFFIZI mark in headings above the diary booking system all support the notion that the site is that of the Complainant or is commercially connected to or specially endorsed by the Complainant.  To identify that this is not the case, the visitor must scroll to the left hand sidebar and read the fourth paragraph of four, all of which are presented in grey text on a white background in a relatively small typeface.  The eye is not drawn to this sidebar but rather to the full width image at the top of the page with its large white overlaid text, together with the large black text below with the words "BOOK NOW UFFIZI TICKETS".

The Panel notes the Respondent's submission that it has been using the disputed domain name for its present use over almost a decade without complaint or objection from the Complainant.  Section 4.17 of the WIPO Overview 3.0 notes that panels have widely recognized the fact that mere delay between the registration of a domain name and the filing of a complaint neither bars a complaint from filing such case, nor

from potentially prevailing on the merits.  The section adds that panels have noted that the UDRP remedy is injunctive rather than compensatory, and that a principal concern is to halt ongoing or avoid future abuse/damage, not to provide equitable relief.  A qualification to this approach is noted that in specific cases, certain delays in filing a UDRP complaint may make it more difficult for a complainant to establish its case on the merits, particularly where the respondent can show detrimental reliance on the delay.

In the Panel's opinion, the qualification to the general rule on delay does not apply in the present case. There is no evidence that the Complainant was or should have been aware of the Respondent's activities prior to the filing of the Complaint, nor that the Respondent has acted to its detriment in reliance on such knowledge.  Those cases which apply the qualification appear in the Panel's opinion to be based upon very specific facts and circumstances which do not apply here, such as, for example, the fact that a complainant was a previous registrant of the domain name concerned and after some years of inactivity took steps to reassert rights over such domain name after other parties had arranged their own affairs and taken steps to advance their own interest therein (see *NYLSTAR S.A. v. Domain Administrator, Meryl Blog*, WIPO Case No. D2016-0561) or the fact that a complainant knew of and condoned the use over a lengthy period of the domain name concerned for a fan site which did not compete and could not be confused with such complainant (see *Green Bay Packers, Inc. v. Moniker Privacy Services / Montgomery McMahon*, WIPO Case No. D2016-1455).

In summary, the Panel upholds the Complainant's contention that on the balance of probabilities the Respondent acquired and used the disputed domain name to intentionally attempt to attract, for commercial gain, Internet users to the Respondent's website by creating a likelihood of confusion with the Complainant's mark as to the source, sponsorship, affiliation, or endorsement of such website or of products or services on such website, conform to paragraph 4(b)(iv) of the Policy.  The Panel has also found that the disclaimer on such site is insufficiently prominent to avoid the likelihood of confusion and serves to confirm that the Respondent is fully aware of such likelihood and is seeking to benefit thereby.  The fact that the Respondent may have done this for some time already and has recently registered a figurative trademark to support such activity does not in the Panel's opinion shield it from a finding of bad faith in terms of the Policy.

In all of these circumstances, the Panel finds that the disputed domain name has been registered and is being used in bad faith and therefore that the requirements of paragraph 4(a)(iii) of the Policy have been satisfied.

## 7. Decision

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain name, <uffizi.com>, be transferred to the Complainant.

**Andrew D. S. Lothian**
Sole Panelist
Date:  April 2, 2018