Brian W. LaCorte (012237)
lacorteb@ballardspahr.com
Jonathon A. Talcott (030155)
talcottj@ballardspahr.com
Mitchell L. Turbenson (033278)
turbensonm@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595
*Attorneys for Defendant/Counterclaimant
Gallerie degli Uffizi*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BoxNic Anstalt,<br><br>Plaintiff/Counterdefendant,<br><br>vs.<br><br>Gallerie degli Uffizi,<br><br>Defendant/Counterclaimant. | Case No. CV-18-01263-PHX-DGC<br><br>**GALLERIE DEGLI UFFIZI'S MOTION TO ENTER DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST BOXNIC ANSTALT** |

Pursuant to Fed. R. Civ. P. 55(b)(2), Fed. R. Civ. P. 65(d), and this Court's Order dated November 1, 2019 stating that the Court "will enter default judgment against Plaintiff on Defendant's counterclaims" (Doc. 44), Defendant/Counterclaimant Gallerie degli Uffizi ("Defendant" or "the Gallerie") hereby files this Motion to Enter Default Judgment and Permanent Injunction ("Motion"), requesting entry of the Gallerie's Proposed Order that is lodged herewith. In support of the Motion, the Gallerie submits evidentiary materials attached as Exhibits 1-16, including a declaration from the Gallerie's director, Dr. Eike Schmidt (Ex. 1, "Schmidt Decl.").

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Despite bringing this action and hailing a world-renowned museum into this Court from overseas, BoxNic remarkably and suddenly chose not to participate in it. Not only did BoxNic fail miserably to meet its discovery obligations, but the moment its back was against the wall and its counsel withdrew, BoxNic bailed on its own case. The problem for BoxNic is that Gallerie's counterclaims remain in full force and effect. Indeed, they are the only mechanism now for the Gallerie to seek justice by putting a halt to BoxNic's pattern of bad faith domain name registrations and infringement of the Gallerie's world famous UFFIZI trademarks.

Due to BoxNic's egregious conduct, this Court has already stated that it "will" enter default judgment. Thus, the only remaining issues in the case are whether the scope and terms of the Gallerie's proposed default judgment and permanent injunction are proper. They are, as the well-pled allegations in the Counterclaims and evidentiary materials submitted with this Motion demonstrate. Accordingly, the Gallerie respectfully requests that the Court enter the lodged Proposed Order to permanently enjoin BoxNic from further infringement or cybersquatting and return to the Gallerie its rightful property in the domain names incorporating the UFFIZI marks.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Summary of the Parties' Claims

BoxNic filed its Complaint on April 24, 2018. (Doc. 1.) In that Complaint, BoxNic asserted claims for reverse domain name hijacking and for declarations of non-infringement and superior trademark rights with respect to the UFFIZI.COM domain name. (*Id.* ¶¶ 24-45.) BoxNic's Complaint effectively appealed the result of an administrative Uniform Domain Name Dispute Resolution Policy ("UDRP") action filed by the Gallerie. (*Id.* ¶¶ 15-22.) In that UDRP action, an arbitrator of the World Intellectual Property Organization ("WIPO") found that BoxNic had registered the UFFIZI.COM domain name in bad faith, and ordered BoxNic to transfer the domain name to the Gallerie. (*Id.*, Ex. H

at p. 13.) The transfer of the UFFIZI.COM domain is on hold pending resolution of this action. (*Id.* ¶ 20.)

In response to BoxNic's Complaint, on March 19, 2019, the Gallerie timely filed an Answer and Counterclaims. (Doc. 19.) In its Counterclaims, the Gallerie broadly alleges trademark rights in "a variety of distinctive names" that are variations of the UFFIZI term, including "Uffizi," "Gallerie degli Uffizi," "Uffizi Gallery," and a distinctive logo incorporating the term "LE GALLERIE DEGLI UFFIZI" (collectively, hereafter, the "UFFIZI Mark" or "UFFIZI Marks"). (*Id.* ¶¶ 11-16.) The Gallerie alleges BoxNic violated these trademark rights through a variety of actions undertaken in bad faith and with the intent to trade off the Gallerie's goodwill established in the UFFIZI Marks in order to sell unauthorized tickets and other services for Gallerie properties and events. (*Id.* ¶¶ 17-34, 40.) The Gallerie asserts counterclaims for cybersquatting, trademark infringement, unfair competition, trademark dilution, and a declaration of superior trademark rights to the UFFIZI.COM domain and UFFIZI marks. (*Id.* ¶¶ 35-69.)

**B.     The Gallerie's Strong Trademark Rights in UFFIZI Marks**

Established in the sixteenth century, the Gallerie, which is commonly known and often referred to simply as "The Uffizi," is a world-famous art museum located in Florence, Italy. (Schmidt Decl. ¶¶ 1-4.) Today, the Gallerie is one of the largest and most visited museums in the world, including extensively by consumers from the United States. (*Id.* ¶ 5.) The Gallerie houses many famous works, mostly from the Italian Renaissance period. (*Id.*; Doc. 19 ¶¶ 2, 8.)

The Gallerie's museum complex was originally constructed for the purpose of housing the official offices of Florentine magistrates and other Italian government personnel. (Schmidt Decl. ¶ 6.) That is the origin of the name "Uffizi," which is an obsolete Italian word meaning "offices." (*Id.*) However, other than in reference to the Gallerie itself, the term "Uffizi" has no meaning with respect to art, museums, or related products or services. (*Id.* ¶ 7.) Over the centuries, the Gallerie has conducted extensive business and developed substantial goodwill and recognition worldwide under the UFFIZI

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Marks. (*Id.* ¶ 8.) The Gallerie also has obtained registration-based trademark rights covering the UFFIZI Marks. (*Id.* ¶¶ 9-10.) As such, the UFFIZI Marks are inherently distinctive, strong trademarks as used in connection with museum and museum-related products and services. (*Id.* ¶ 11; Doc. 19 ¶¶ 9-16.)

**C. BoxNic's Bad Faith Registrations and Unlawful Uses of the UFFIZI Marks and Domain Names Incorporating Them**

When BoxNic registered the UFFIZI.COM mark, BoxNic admits that it was aware of the Gallerie's centuries-old existence and use of the UFFIZI Marks. (Doc. 24 ¶¶ 2, 20.) On its website originally located at UFFIZI.COM that BoxNic has since redirected to FLORENCE.NET (the "UFFIZI.COM Website"), BoxNic has displayed and used the UFFIZI Marks in a manner suggesting an affiliation with, sponsorship, or endorsement by the Gallerie. (Schmidt Decl. ¶¶ 12-14; Exs. 5-6.)[1] On the UFFIZI.COM Website, BoxNic has offered and continues to offer for sale unauthorized tickets and other services, such as audio/video guides and tours, for gaining admission and visiting the Gallerie and its other properties and events. (Schmidt Decl. ¶¶ 15-16; Exs. 5-6; Doc. 19 ¶¶ 17-34.)

Since filing its Complaint, BoxNic appears to have swapped in a different logo for display atop the current UFFIZI.COM Website in an apparent attempt to conceal its infringement. However, in the prior version of this website, BoxNic displayed a logo shown below that incorporates the UFFIZI.COM designation with a medallion ("Infringing Uffizi.com Logo"), misleadingly suggesting that it is an official logo affiliated with the Gallerie. (*E.g.*, Doc. 1, ECF p. 20; Ex. 5.)



Although BoxNic failed to disclose them during the course of this litigation, and contradicting its interrogatory response, BoxNic has registered additional domain names

---

[1] Exhibits 3-16 are each authenticated by Exhibit 2, the Declaration of Jonathon A. Talcott ("Talcott Decl."), at Paragraphs 19-38 within that declaration.

4

in bad faith to trade upon the Gallerie's goodwill and trademark rights in the UFFIZI Marks. (Schmidt Decl. ¶ 17; Talcott Decl. ¶ 16; Ex. 3 at 8/22/19 letter.) These domain names are as follows and, along with UFFIZI.COM, shall be collectively referred to as the "Infringing Domains": UFFIZI.NET; UFFIZIGALLERY.COM; UFFIZIGALLERY.NET; UFFIZIGALLERY.ORG; AMICIDEGLIUFFIZI.COM; UFFIZI.FR; and AUTORITRATTIUFFIZI.COM. (*Id.*)

Like UFFIZI.COM, these additional domains are registered to BoxNic[2] and incorporate the UFFIZI trademark in its entirety, adding only descriptive words such as "gallery," "amici degli" (Italian for "friends of"), and "autoritratti" (Italian for "self-portrait"). (Schmidt Decl. ¶¶ 18-19; Exs. 7-13.) And except for UFFIZI.FR and AUTORITRATTIUFFIZI.COM, which are inactive, these domains all direct to the same website entitled "Uffizigallery.com." (*Id.*) On the Uffizigallery.com website, BoxNic displays the UFFIZI marks and advertises Gallerie events and related "tours" – all of which improperly suggest an affiliation, sponsorship, or endorsement of the site by the Gallerie. (*Id.*; Schmidt Decl. ¶ 20.)

BoxNic also has attempted to trade off the marks of other tourist attractions that are under the family of locations controlled and administered by the Gallerie, further demonstrating BoxNic's pattern of bad faith registrations and infringing conduct. (Schmidt Decl. ¶ 21; Doc. 19 ¶ 40(e).) Specifically, BoxNic has registered the following domains linking to websites operated by BoxNic that are associated with other famous Gallerie tourist attractions known as Giardino di Boboli (a/k/a "Boboli Gardens") and Galleria dell´Accademia (a/k/a "Gallery of the Academy of Florence"): GIARDINODIBOBOLI.COM; GALLERIADELLACCADEMIA.COM;

---

[2] While the registration records are set to private for the AUTORITRATTIUFFIZI.COM, GIARDINODIBOBOLI.COM, and the GALLERIADELLACCADEMIA domains, they must be registered to BoxNic (or within BoxNic's control) because BoxNic operates the websites to which they direct and, notably, the registrant's address is in Lichtenstein. (Talcott Decl. ¶¶ 33-36.)

1  GALLERIADELLACCADEMIA.NET; and GALLERIADELLACCADEMIA.IT.  (*Id.*;
2  Exs. 14-15.)

3  While these domain names do not incorporate the UFFIZI term, their websites still
4  infringe.  They display a "Power by Uffizi.com" logo nearly identical to the Infringing
5  Uffizi.com Logo, as shown below:



9  (Schmidt Decl. ¶¶ 22-23; Exs. 14-15.)  Further, on these sites, BoxNic also displays
10 unauthorized images of various works of art that are housed at the Gallerie and its other
11 properties, and links back to the UFFIZI.COM Website through which BoxNic sells tickets
12 to the Gallerie.  (*Id.*; Schmidt Decl. ¶¶ 24-27.)

13 **D.  Actual Confusion and Irreparable Harm**

14 As Dr. Schmidt explains in his declaration, significant actual confusion exists in the
15 form of consumers mistakenly attributing an affiliation between the Gallerie and
16 UFFIZI.COM.  (Schmidt Decl. ¶¶ 28-40.)  Among other incidents, these include: vendors
17 trying to sell art-related products to BoxNic thinking it was the Gallerie; job applicants
18 contacting BoxNic seeking employment from the Gallerie; visitors to the Gallerie
19 contacting BoxNic about official Gallerie policies and procedures' and visitors to the
20 Gallerie who left personal items contacting BoxNic to retrieve them.  (*Id.*; Ex. 16.)

21 Dr. Schmidt also explains that the Gallerie has suffered and will continue to suffer
22 irreparable harm if BoxNic is allowed to continue using the UFFIZI mark and Infringing
23 Domains.  In addition to the harm to both the public and the Gallerie arising from the
24 significant actual consumer identified *supra*, Dr. Schmidt states that the Gallerie has
25 suffered irreparable harm in the forms of:  Internet traffic lost to the UFFIZI.COM Website;
26 the Gallerie's diminished ability to control the sale of its own tickets and related products,
27 which are strictly governed by Italian law and limited to specifically authorized reseller
28 channels; the Gallerie's diminished ability to control its marketing and other important

communications to visitors relating to the Gallerie's policies and procedures that include unique aspects of Italian culture with which worldwide visitors may not be familiar; and reputational harm. (Schmidt Decl. ¶¶ 41-46.)

### E.  BoxNic's Exceptional Litigation Conduct

Despite bringing this lawsuit, BoxNic failed to meaningfully participate in the case, prosecute its claims, or defend against the Counterclaims. As this Court previously found, BoxNic failed to comply with its discovery obligations. (Doc. 43 at 2; Doc. 39 at 2.) BoxNic's MIDP disclosures, document productions, and responses to the Gallerie's written discovery requests were all deficient and remained so despite months of the Gallerie diligently seeking to cure those deficiencies and representations from BoxNic's counsel that it would do so. (Talcott Decl. ¶¶ 1-18.) These lack of disclosures included the Infringing Domains and related information—in direct contradiction to BoxNic's discovery responses. (*Id.* ¶ 16; Ex. 4 at Response to Interrog. No. 8 (disclosing only UFFIZI.COM and FLORENCE.NET).)

After the Gallerie timely brought these issues to BoxNic's attention, BoxNic's counsel represented that BoxNic would provide a comprehensive, "substantially complete" supplementation of its MIDP disclosures, written discovery responses, and document productions no later than July 24, 2019, but never did so. (Doc. 43 at 2; Doc. 39 at 2; Talcott Decl. ¶¶ 14-15.) Instead, on August, 23, 2019, BoxNic's counsel moved to withdraw, ultimately citing, among other things, BoxNic's failure to communicate with counsel. (Doc. 37; Talcott Decl. ¶ 16.) Because a corporation cannot appear in federal court without counsel, the Court set a telephonic hearing for September 3, 2019 and ordered a representative of BoxNic to participate. (Doc. 43.) The hearing was held as scheduled, but a representative of BoxNic did not participate. (*Id.*) During that hearing, the Court admonished BoxNic's counsel that BoxNic faced default judgment if it did not arrange for new counsel to appear on its behalf. (*Id.*)

In a subsequent Order issued October 1, 2019, the Court afforded BoxNic one final opportunity, until October 25, 2019, for new counsel to appear on its behalf. (Doc. 43.)

7

1  That did not happen.  On November 1, 2019, after BoxNic failed to comply with the Court's
2  orders or obtain new counsel, the Court dismissed BoxNic's Complaint with prejudice.
3  (Doc. 44.)  The Court further stated it would enter default judgment against BoxNic on the
4  Gallerie's counterclaims, giving the Gallerie until November 22, 2019 to provide the Court
5  with a proposed default judgment and evidentiary material supporting the amount of any
6  monetary judgment or the terms of any injunctive relief.  (*Id.*)  The Gallerie timely did so
7  by filing this Motion.

## III. THE COURT SHOULD ENTER THE PROPOSED DEFAULT JUDGMENT AND INJUNCTION AGAINST BOXNIC

### A. The Court Has Already Stated it Will Enter Default Judgment and the the Proposed Injunction Is Reasonable and Does Not Differ in Kind from what the Counterclaims Demand.

12  The scope of a default judgment "must not differ in kind from, or exceed in amount,
13  what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Here, in its Counterclaims
14  pleading, the Gallerie requested an injunction broadly prohibiting BoxNic from continued
15  use of the UFFIZI Marks, including but not limited to through ordering transfer of the
16  UFFIZI.COM domain name to the Gallerie, enjoining BoxNic from using the UFFIZI
17  Marks on website content, and prohibiting BoxNic from otherwise using the UFFIZI Marks
18  in connection with selling tickets to the Gallerie and events sponsored by or affiliated with
19  the Gallerie.  (Doc. 19 ¶¶ 43, 51, 57, 64.)  The Gallerie's pleading also sought a declaration
20  that it has superior rights over BoxNic in and to the UFFIZI Marks and UFFIZI.COM
21  domain.  (*Id.* ¶ 69.)

22  Similarly, the Gallerie's Motion requests that the Court dismiss BoxNic's
23  Complaint with prejudice, which the Court has already ordered, and asks the Court to enter
24  default judgment including a permanent injunction, which the Court has already indicated
25  it will do.  (Doc. 44 ¶¶ 2-3.)  While true that the proposed injunction includes certain
26  domain names and website content infringing upon the UFFIZI Marks that were not
27  expressly recited in the Gallerie's allegations, those domains and websites are well within
28  the scope of the ultimate relief that the Gallerie sought.  To wit: stop BoxNic from using

8

1 the UFFIZI Marks in either domain names, on website content, or otherwise in violation
2 of the Gallerie's trademark rights.  And that is exactly what BoxNic is doing with these
3 additional domain names and website content.  What's more, BoxNic failed to disclose
4 these domain names and websites during discovery and should not benefit from doing so
5 when the Gallerie would otherwise have been able to amend its Counterclaims to expressly
6 reference them.  Thus, the requested remedy is does not "differ in kind" from what was
7 pled.

8 Moreover, the requirements for the contents and scope of the requested injunction
9 order under Fed. R. Civ. P. 65(d) are satisfied.  The Lanham Act permits courts to grant
10 such an injunction "according to the principles of equity and upon such terms as the court
11 may deem reasonable" to prevent further trademark infringement and cyberpiracy."  15
12 U.S.C. § 1116(a); *PepsiCo, Inc.*, *v. California Security Cans,* 238 F. Supp.2d 1172, 1177
13 (C.D. Cal. 2002).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and
14 unfair competition cases, since there is no adequate remedy at law for the injury caused by
15 [the accused infringer's] continuing infringement."  *Century 21 Real Estate Corp. v.*
16 *Sandlin,* 846 F.2d 1175, 1180 (9th Cir. 1988).

17 Here, the specificity and scope of the requested injunction is reasonable as being
18 limited to enjoining use of the UFFIZI Marks, whether on websites or in domain names.  It
19 is also supported by the unrebutted material evidence at issue, which are the domain name
20 registration records, website content itself, and testimony from the Gallerie's director as to
21 the strength of the mark, actual confusion, and irreparable harm.  The Proposed Order also
22 comports with those that this Court has entered in past trademark cases where a party has
23 defaulted.  *See, e.g.*, *Best Western Int'l., Inc. v. Universal Hosp., Inc.*, No. CV-08-91-PHX-
24 DGC, 2008 U.S. Dist. LEXIS 40348, at *8 (D. Ariz. May 8, 2008); *Best Western Int'l, Inc.*
25 *v. Sharda, Ltd. Liab. Co.*, No. CV-08-1219-PHX-DGC, 2008 U.S. Dist. LEXIS 66536, at
26 *12 (D. Ariz. Aug. 20, 2008).  In addition, transfer of the disputed domain names is a
27 statutory remedy available for cybersquatting. 15 U.S.C. § 1125(d)(1)(C); *see Curtis v.*
28 *Shinsachi Pharm., Inc.*, 45 F. Supp. 3d 1190, 1204 (C.D. Cal. 2014) (ordering transfer of

9

domain names where registrant's "past actions indicate[d] that they would likely continue to engage in bad faith, disparaging conduct"). Likewise, the requested relief here is proper.

### B. To the Extent They Apply, the *Eitel* Factors Strongly Favor Entering the Default Judgment and Proposed Injunction.

Factors the Court may consider in deciding whether to grant default judgment include: (i) the possibility of prejudice to the plaintiff, (ii) the merits of the claim, (iii) the sufficiency of the complaint, (iv) the amount of money at stake, (v) the possibility of a dispute concerning material facts, (vi) whether default was due to excusable neglect, and (vii) the policy favoring a decision on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Generally, in applying the Eitel factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); see Fed. R. Civ. P. 8(d).

To the extent they apply in this case, the *Eitel* factors favor entry of the proposed default judgment. For the first factor, if the Court did not enter default judgment, the Gallerie would face significant prejudice in the form of irreparable harm arising from BoxNic's conduct as explained above. *See Beats Elecs., Ltd. Liab. Co. v. Deng*, No. 2:14-cv-1077 JAM AC (TEMP), 2016 U.S. Dist. LEXIS 10485, at *5 (E.D. Cal. Jan. 28, 2016)

The second and third *Eitel* factors also favor granting this Motion. The Counterclaims are well-pled and have substantial merit based on the record before the Court. *See id.* at *6-7. First, "[a] defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability." *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002) The Gallerie's Counterclaims are well-pled, nor BoxNic did not move to dismiss any of them for failure to state a claim. (*See* Doc. 24.) Second, though BoxNic defaulted before discovery could be completed, the record before the Court as presented by this Motion satisfies the legal and factual elements required by each of the Counterclaims.

Specifically, to support a claim for trademark infringement, the Gallerie properly alleged (1) that the Gallerie has a protectable ownership interest in the UFFIZI Marks, and

(2) that BoxNic's use of the mark is likely to cause consumer confusion. *Dep't of Parks and Rec. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (reciting well-known *Sleekcraft* factors for determining likelihood of confusion). Here, the Gallerie has established that it has strong trademark rights in the UFFIZI Marks as noted above. There is also a substantial likelihood of confusion. BoxNic sells competing tickets and other services such as tour guides to the very same tourist attractions and events administered by the Gallerie, to the same consumers, and incorporates the Gallerie's UFFIZI Marks in their identical form.

Moreover, there is significant evidence of actual confusion as explained by Dr. Schmidt in his declaration, and "[w]hile the absence of evidence of actual confusion may be insignificant, when such evidence does exist then it is entitled to *significant weight*." *See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999) (emphasis added). Thus, the likelihood of confusion factors all support the Gallerie's claims for trademark infringement and unfair competition. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (noting the test for unfair competition is the same as for trademark infringement).

The Gallerie's claims for trademark dilution and cybersquatting also have substantial merit. For dilution, the Gallerie has pled and shown that the UFFIZI Marks are famous because they are known worldwide and used in connection with famous museums and other venues for displaying famous art, and BoxNic's actions decrease the ability of the UFFIZI Marks capacity to identify and distinguish the Gallerie as the sole authorized provider of museum and museum-related products and services under the UFFIZI Mark. (Schmidt Decl. ¶¶41-46.) 15 U.S.C. § 1125(c). For cybersquatting, the Gallerie has shown that BoxNic registered and used the Infringing Domains, that they are identical or confusingly similar to the UFFIZI Marks, and that BoxNic clearly has acted with bad faith intent to profit from the UFFIZI Marks. *See* 15 U.S.C. § 1125(d)(1)(A); *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010).

Finally, for its request for a declaration of superior trademark rights, BoxNic admitted there was a sufficient case or controversy for the Court to issue such a declaration (and indeed filed a similar claim), and the record before the Court clearly establishes that the Gallerie has superior rights to the UFFIZI Marks. Thus, the second *Eitel* factor is likewise satisfied.

Applying the fourth *Eitel* factor, the sum of money requested by the Gallerie, namely, an amount equal to its attorneys' fees and costs, favors entry of default judgment as a deterrent to similar actions by BoxNic in the future. *See PepsiCo*, 238 F. Supp. 2d at 1177 (finding factor favored entry of default judgment when plaintiffs sought injunctive relief only on Lanham Act claims). With respect to the fifth *Eitel* factor, the possibility of a dispute concerning material facts is low insofar as the facts of this case are relatively straightforward, the Gallerie has provided the Court with well-pleaded allegations and a Motion supporting its Counterclaims, and because BoxNic already had its chance to contest these facts but failed to prosecute the litigation that it brought in this Court.

As for the sixth and seventh *Eitel* factors, the default was not the result of excusable neglect, and the policy favoring decisions on the merits does not preclude entry of default judgment under these circumstances, where BoxNic has acted in bad faith and failed to participate in the litigation despite having several warnings from the Court to do so or else face default judgment. While cases should be decided upon their merits whenever reasonably possible, the mere existence of Fed. R. Civ. P. 55(b) demonstrates that "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1172 (internal citation omitted). Because BoxNic's failure to litigate its own case or defendant against the Counterclaims makes a decision on the merits impractical, if not impossible, courts are empowered to enter default judgment. *See id.*

Thus, the Court should enter the requested default judgment and permanent injunction.

### C. The Gallerie is Entitled to its Attorneys' Fees and Costs Due to the Exceptional Nature of BoxNic's Conduct in this Case.

This case stands out not only for the bad faith actions of BoxNic as noted above, but also for BoxNic's litigation conduct, its failure to prosecute the claims that in brought in this Court, and its failure to defend against the Gallerie's Counterclaims (essentially conceding them), all of which unnecessarily increased the attorneys' fees and costs that the Gallerie was forced to expend on this case.  In light of BoxNic's egregious failure to comply with its discovery obligations and this Court's orders, and BoxNic's other bad faith acts of registering infringing domain names and otherwise infringing upon the Gallerie's trademark rights, the Court should find this case to be "exceptional" pursuant to 15 U.S.C. § 1117(a) and the "totality of the circumstances" standard set forth by the Ninth Circuit in *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016).

### IV.   CONCLUSION

For the foregoing reasons, the Gallerie prays for judgment against BoxNic in the form of the Proposed Order lodged concurrently herewith.

RESPECTFULLY SUBMITTED this 22nd day of November, 2019.

**BALLARD SPAHR LLP**

By: */s/ Jonathon A. Talcott*
   Brian W. LaCorte
   Jonathon A. Talcott
   Mitchell L. Turbenson
   1 East Washington Street, Suite 2300
   Phoenix, AZ 85004-2555
   *Attorneys for Defendant/Counterclaimant Gallerie degli Uffizi*

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

**CERTIFICATE OF SERVICE**

I certify that on the 22nd day of November, 2019, I electronically transmitted a PDF version of this document to the Office of the Clerk of the Court, using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants listed for this matter.  Additionally, I certify that on this same date, a true and correct copy of the foregoing was sent via U.S. First Class Mail, postage prepaid, to the following:

> Sharon A. Urias
> Todd J. Langford
> GREENSPOON MARDER LLP
> 8585 E. Hartford Drive, Suite 700
> Scottsdale, AZ 85255

I further certify that on this same date, a true and correct copy of the foregoing was sent via FedEx to the following:

> Mr. Herrand Trauttmansdorff
> Landstrasse 39
> FL-9490 Vaduz
> Liechtenstein

By: *Jonathon A. Talcott*