# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| BoxNic Anstalt,<br><br>　　　　Plaintiff/Counterdefendant,<br><br>vs.<br><br>Gallerie degli Uffizi,<br><br>　　　　Defendant/Counterclaimant. | Case No. CV-18-01263-PHX-DGC<br><br>**AFFIDAVIT OF BRIAN W. LACORTE IN SUPPORT OF GALLERIE DEGLI UFFIZI'S MOTION FOR AWARD OF ATTORNEYS' FEES AND RELATED NON-TAXABLE COSTS** |

Brian W. LaCorte declares as follows:

1. I am attorney of record for Defendant/Counterclaimant Gallerie degli Uffizi ("the Gallerie") and a partner at the law firm of Ballard Spahr LLP ("Ballard Spahr"). I submit this Affidavit in support of the Gallerie's Motion for Award of Attorneys' Fees and Related Non-Taxable Expenses ("Motion") as required by LRCiv 54.2(d)(4).

2. I have been substantially involved in this case and have personal knowledge of the legal services rendered. I have personal knowledge of the facts stated herein and, if called as a witness, could and would competently testify thereto.

**Background**

3. Over the past 15 months, I worked with several other attorneys and paralegals at Ballard Spahr in connection with this litigation. Legal tasks generally were assigned to the most junior available attorney capable of providing efficient legal services required by the task.

1

4.  I recorded [REDACTED] hours (not including time for this motion) in connection with this litigation. My principal area of practice is intellectual property litigation, and I have represented clients in trademark litigation matters and domain name disputes such as this one for over 30 years. I have a long history of practice before federal district courts throughout the United States and this Court in trademark litigation matters. I have been licensed to practice law in the State of Arizona since 1988. I contributed to the result of this case by supervising the other attorneys staffed on the matter, developing key legal arguments throughout the various stages of the litigation, evaluating experts, assisting in the drafting and editing of the written briefing submitted to the Court, preparing for and participating in hearings throughout this matter, and assisting in the preparation of this fee application.

5.  Jonathon A. Talcott recorded [REDACTED] hours (not including time for this motion) in connection with this matter. Mr. Talcott is a senior associate at Ballard Spahr. He is a registered patent attorney and his principal area of practice is intellectual property litigation, including trademark litigation and domain name disputes such as the present matter. He has been licensed to practice law since 2010 and licensed to practice law in the State of Arizona since 2013. He contributed to the result of this case by serving as the lead associate, taking primary responsibility for drafting the written materials submitted to the Court, researching legal issues, developing key legal arguments throughout the various stages of the litigation, evaluating experts, preparing for and attending hearings throughout this case, and preparing this fee application.

6.  Mitchell L. Turbenson recorded [REDACTED] hours in connection with this matter. Mr. Turbenson is an associate at Ballard Spahr. His principal area of practice is complex commercial litigation, including intellectual property matters such as the present matter. He has been licensed to practice law in the State of Arizona since 2016. He contributed to the result of this case by researching legal issues, performing factual investigations, assisting with preparing various written materials submitted to the Court, attending and supporting hearings in throughout the case, and preparing this fee application.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

7. Jessica A. Wilson recorded ▮ hours in connection with this matter. Ms. Turbenson is a former associate at Ballard Spahr. While at Ballard, her principal area of practice was intellectual property litigation. She has been licensed to practice law in the State of Arizona since 2015. She contributed to the result of this case by researching legal issues, performing factual investigations, and evaluate service of process and related issues at the outset of the case.

8. Tasha Hart recorded ▮ hours in connection with this matter. Ms. Hart is a litigation paralegal at Ballard Spahr. She has significant experience in intellectual property matters such as this one and other complex commercial matters within Ballard Spahr's litigation department in Phoenix. She contributed to the result of this case by assisting in document management and performing factual investigations, among other paralegal tasks.

9. Irene Winterburn recorded ▮ hours in connection with this matter. Ms. Winterburn is a senior IP litigation paralegal at Ballard Spahr. She principally works with Ballard Spahr's intellectual property litigation department in Phoenix. She contributed to the result of this case by assisting in document management, performing factual investigations, and drafting indexes, summaries and correspondence to opposing counsel, among other paralegal tasks, including assistance with preparing this fee application.

**Reasonableness of the Rates**

10. The fee agreement that governs Ballard Spahr's legal services rendered for the Gallerie in this case is attached as Exhibit 5 to the Motion, which contains the original Italian version and translation into English ("Fee Agreement").

11. The Fee Agreement includes Ballard Spahr's standard terms of engagement and provides 2018-based rates for primary timekeepers.

12. Ballard Spahr's rates for this case are reasonable given due consideration to the attorneys' and paralegals' abilities, training, education, experience, skill and personal standing, the intricacy and difficulty of the work performed, the time and skill required, the responsibility imposed, and the results obtained.

3

13. All attorneys and the paralegal recorded their time through increments of 1/10 of an hour concerning this matter for payment of billed time by hourly rate. The following table summarizes the amount of time spent, the rate, and the total amount billed for services rendered to the Gallerie:

| Timekeeper | Hours | Rate | Amount |
|---|---|---|---|
| Brian W. LaCorte, Partner | REDACTED | REDACTED | $1,320.50 |
| Brian W. LaCorte, Partner | REDACTED | REDACTED | $20,445.00 |
| Jonathon A. Talcott, Senior Associate | REDACTED | REDACTED | 72,176.00 |
| Jonathon A. Talcott, Senior Associate | REDACTED | REDACTED | $1,092.50 |
| Mitchell L. Turbenson, Associate | REDACTED | REDACTED | 8,192.00 |
| Mitchell L. Turbenson, Associate | REDACTED | REDACTED | $280.00 |
| Jessica A. Wilson, Associate | REDACTED | REDACTED | 288.00 |
| Irene Winterburn, Paralegal | REDACTED | REDACTED | $1,044.00 |
| Irene Winterburn, Paralegal | REDACTED | REDACTED | 60.00 |
| Tasha M. Hart, Paralegal | REDACTED | REDACTED | 340.00 |
| TOTAL: | 203.9 | | $105,238.00 |

14. The above rates are particularly reasonable in the legal market of Phoenix, Arizona. Trademark litigation rates at large firms typically command a higher hourly rate, particularly for experienced trademark litigation attorneys. For someone at a partner level for these types of cases, rates generally range from REDACTED/hour to REDACTED/hour. The rates for the undersigned, Brian LaCorte, at REDACTED is at or below the prevailing market rates for a trademark litigation attorney with 30 years of experience.

15. As stated, the attorneys who participated in this case have significant trademark expertise, and the matter involved a relatively complex trademark and domain name dispute involving international parties, multiple trademarks and technical issues relating to domain names, e-commerce websites, and consumer impressions of the parties' marks, among other complex and/or technical issues. Accordingly, the time spent for this matter encompassed analysis of complex factual, legal, and technical issues surrounding

4

priority to, ownership in, cybersquatting and infringement of the trademarks and domain names at issue, and related complexities concerning procedural aspects of the case.

16. The details of the description and nature of services for which payment by the Gallerie was made, the time involved in such services and the identity of the person performing such services are set forth in the Task-Based Itemized Statement of Attorneys' Fees and Related Non-Taxable Expenses ("Itemized Statement"), which is attached as Exhibit 2 to the Gallerie's Motion.

17. The Itemized Statement includes the hourly rates customarily charged by Ballard Spahr LLP on a pay-as-you-go basis and descriptions of the work performed, redacted for privilege as necessary. The itemization was produced from time recording and expense records which are regularly maintained in the course of Ballard Spahr LLP's business.

18. I have generally summarized the contributions per attorney and paralegal in Paragraphs 4-9, above, which I incorporate here by reference.

**Reasonableness of Time Spent and Expenses Incurred**

19. I have reviewed and have approved the time and charges set forth in the Itemized Statement (Exhibit 2 to the Gallerie's Motion). The time spent and expenses incurred were reasonable and necessary under the circumstances.

20. As discussed in the accompanying Motion, the Court may award the Gallerie its reasonable attorneys' fees if the Court makes a finding that this case is "exceptional" under the *Octane Fitness* framework and 15 U.S.C. § 1117(a). In my 30 years of experience, I find this case to meet this "exceptional" standard. For example, BoxNic brought this action yet failed to participate in it, disobeyed court orders, failed its discovery obligations, and caused the Gallerie to incur unnecessary fees and expenses based on what were substantively very weak claims. BoxNic's pattern of bad faith domain name registrations and willful trademark infringement, as presented in the Motion and throughout this case, further support the requested fee award and finding that this case is

5

exceptional. These actions support the Court finding this case "exceptional" under *Octane Fitness*.

21.     This matter involved complex trademark and domain name issues and an evasive foreign entity who ultimately simply gave up its claims despite bringing the lawsuit in the first place. Accordingly, the significant time and attorney skill required for this matter was justified for complex factual, legal, and technical issues surrounding the trademarks, domain names, and related issues such as priority, ownership, and consumer impressions and likelihood of confusion (a multi-factor, complex analysis in itself).

22.     The attorneys and paralegals who worked on this case spent significant resources devoted exclusively to this case, and to the exclusion of other matters.

23.     As the billing partner for this matter, I have at times exercised "billing judgment" to adjust the bill as submitted to the Gallerie for payment. I have adjusted and written off substantial time for this matter, writing off duplicative and excessive time, deleting certain categories of time or expense entries such as clerical or staff litigation support entries, legal intern fees, deleting any cost items for internal Ballard photocopying, and Lexis/Westlaw legal research fees.

24.     The total amount written off in this matter is approximately $40,390.50 in attorneys' fees and $500 in expenses.

25.     As set forth in the Motion, the total requested attorneys' fee award is $105,238.00 and the total of non-taxable expenses requested is $16,731.50 ($6,500.00 for expert witness fees and $10,231.50 for document translations).

26.     While neither party sought damages in this case, the value of intellectual property and domain name rights involved were substantial given that BoxNic challenged and infringed upon the Gallerie's centuries-old right to exclusive use of the UFFIZI Marks. BoxNic sought an injunction preventing transfer of the <uffizi.com> domain name to the Gallerie and a declaration that it had superior trademark rights in that domain name and in rights to the UFFIZI mark within the United States. Thus, the Gallerie's dismissal with prejudice of BoxNic's claims and entry of a default judgment and permanent injunction on

its counterclaims amounts to a highly victorious result and safeguarding of the Gallerie's invaluable intellectual property and domain name rights in and to the UFFIZI Marks, preventing BoxNic from further infringement thereupon. By contrast, the requested fee award is much less in comparative value.

27. In my opinion, the expenses and services set forth above were actually, reasonably, and necessarily incurred expenses in this matter. No time spent in this matter was wasted, inappropriate, or unnecessary.

28. In my experience, the Gallerie's fee request is less than the amount of a typical award in other trademark cases of similar magnitude.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 19, 2020, in Phoenix, Arizona.

*/s/ Brian W. LaCorte*
Brian W. LaCorte