**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BoxNic Anstalt, | No. CV-18-1263-PHX-DGC |
| Plaintiff/Counterdefendant, | |
| v. | **ORDER** |
| Gallerie degli Uffizi, | |
| Defendant/Counterclaimant. | |

This action involves a dispute over the "uffizi.com" domain name and Plaintiff's use of "UFFIZI" trademarks on a website to which the uffizi.com domain name directs viewers. Doc. 1. Plaintiff sought a declaratory judgment that its registration and use of the uffizi.com domain name does not constitute trademark infringement or unfair competition, and that Plaintiff is the rightful registrant of the uffizi.com domain name. *Id.* at 1-2, 6-10. Defendant counterclaimed, alleging cybersquatting, trademark infringement and dilution, and unfair competition under the Lanham Act, 15 U.S.C. § 1125. Doc. 19 at 17-21. Plaintiff failed to comply with its discovery obligations and refused to participate in this litigation. *See* Docs. 41, 43, 44. The Court accordingly entered default judgment against Plaintiff on February 5, 2020. Doc. 49.

Defendant has filed a motion for attorneys' fees and costs. Doc. 51. No response has been filed. For reasons stated below, the Court will grant the motion in part and award Defendant a total of $119,460.50.

/ / /

**I.      Attorneys' Fees Under the Lanham Act.**

Under 15 U.S.C. § 1117(a), a court may award reasonable attorneys' fees to the "prevailing party" in trademark litigation if the court determines the case to be "exceptional." "A trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984); *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated.").

Defendant alleges that it holds valid common law trademark rights in the UFFIZI mark and its variants. Docs. 19 at 19, 50 at 2. Defendant further alleges that Plaintiff acted with a bad faith intent to profit from the UFFIZI marks and the uffizi.com domain name that incorporates the marks, that Plaintiff's unauthorized use in commerce of the domain name and marks is misleading and likely to cause consumer confusion, and that this unlawful conduct is causing immediate and irreparable harm to Defendant. *Id.* at 17-22; Doc. 50 at 2, 7-8. The Court found these allegations to be sufficient to state claims under the Lanham Act for cybersquatting, trademark infringement, unfair competition, and trademark dilution, and entered default judgment. *See* Doc. 49; 15 U.S.C. § 1125(a)-(d). Because Plaintiff refused to appear and participate in this litigation – despite repeated warnings from the Court – Plaintiff has not challenged any of these allegations.

The Court finds this case "exceptional" within the meaning of § 1117(a). Plaintiff failed to respond to the evidence of its intentional and unauthorized use of the domain name and marks. What is more, Plaintiff haled Defendant into court, caused it to incur substantial litigation expenses, and then abandoned the case. The case is exceptional because of the unreasonable manner in which it was litigated. *Octane Fitness*, 572 U.S. at 554; *see also DocRx, Inc. v. DocRx Dispense, Inc.,* No. CV-14-00815-PHX-PGR, 2015 WL 1778360, at *4 (D. Ariz. Apr. 20, 2015) ("an award of reasonable attorneys' fees pursuant to § 1117(a)

is appropriate here due [in part] to the defendants' refusal to defend this action"); *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 961 (D. Ariz. 2013) (finding case exceptional where defendant "did not defend this action, and the allegations in the Complaint, admitted on [defendant's] default, reflect that his misconduct was willful and malicious."); *Am. Auto. Ass'n, Inc. v. Triple A Auto Glass, LLC*, No. 11-CV-2464-PHX-PGR, 2012 WL 1107737, at *2 (D. Ariz. Apr. 2, 2012) ("Because Defendants' infringement is willful and they have refused to appear and defend, this case is 'exceptional'").

## II. Reasonableness of Attorneys' Fees and Costs.

### A. Attorneys' Fees.

Defendant's counsel has submitted a declaration in support of the motion along with supporting documents which set forth his team's qualifications and experience with intellectual property cases. *See* Docs. 50, 50-1. Counsel has provided a chart of hourly rates, the total amount billed for each attorney and paralegal, and the specific amount and type of work performed on behalf of Defendant. Docs. 50-1 ¶¶ 3-9, 13 (redacted), 52 ¶¶ 3-9, 13 (under seal). Counsel has also provided an itemized statement of fees and expenses. Doc. 52-1 (under seal).

Counsel and his team of associates and paralegals spent 203.9 hours on this matter and seek a total fee recovery of $105,238.00. *Id.* ¶ 13 (under seal). Defendant was charged rates ranging from $695.00 to $725.00 per hour for partner and lead counsel Brian LaCorte, $520.00 to $575.00 per hour for Senior Associate Jonathan Talcott, $320.00 to $350.00 per hour for Associates Mitchell Turbenson and Jessica Wilson, $290.00 to $300.00 per hour for paralegal Irene Winterburn, and $170 per hour for paralegal Tasha Hart. Doc. 52 ¶ 13 (under seal). In support of these rates, Mr. LaCorte declares that the billing rates presented are reasonable given the nature of the action and the skill and experience of the professionals involved. *See* Doc. 50-1.

Given counsel's experience, credentials, and the specialized nature of this litigation, the Court cannot conclude that the hourly fees for Mr. LaCorte and Mr. Talcott are unreasonable. *See Kaufman v. Warner Bros. Entm't Inc.*, No. CV-16-02248-PHX-JAT,

2019 WL 2084460, at *12 (D. Ariz. May 13, 2019) (finding reasonable an hourly fee of law firm partner with over three decades of experience in intellectual property actions ranging from $552.00 to $715.00); *see also Jackson v. Wells Fargo Bank, N.A.*, No. CV-13-00617-PHX-SPL, 2015 WL 13567069 at *2 (D. Ariz. Oct. 23, 2015) (citation omitted) ("The best indicator of a reasonable hourly rate for a fee-paying client is the rate charged by the lawyer to the client."). But the Court concludes that the fees charged for the other associates and for the paralegals are excessive. In its discretion, and based on its experience in the Phoenix market and in handling fee applications, the Court will award hourly rates of $250.00 for the associates (who have 4-5 years of experience) and $150.00 for the paralegals. This will result in a reduction of $2,509.00 in Defendants' requested fees. The Court will award a total of $102,729.00 in professional fees.

**B.    Expert Fee.**

Counsel seeks reimbursement of a non-taxable $6,500.00 expert retainer fee. Doc. 50-3 at 2-3. The Ninth Circuit has held that "attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party'" as long as such costs are reasonably incurred. *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d 677, 690 (9th Cir. 2012) *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016); *see also Dropbox, Inc. v. Thru Inc.*, No. 15-CV-01741-EMC, 2017 WL 914273, at *1 (N.D. Cal. Mar. 8, 2017), *aff'd*, 728 F. App'x 717 (9th Cir. 2018) (awarding reasonable expert witness fees of $162,936.00 under § 1117(a)).

Pursuant to the Court's order directing the parties to provide expert disclosures by December 20, 2019, Defendant hired Jonathan Hochman, an e-commerce and internet expert. *See* Doc. 30 ¶5(a). Even though Defendant's counsel did not incur fees on Mr. Hochman's services, it was required to and did pay a customary non-refundable retainer in the amount of $6,500.00. Docs. 50 at 9, 50-3 at 2-3. Plaintiff, which has not responded to the fee application, has provided no basis for the Court to conclude that this retainer amount was unreasonable.

### C. Translation Costs.

Counsel also seeks reimbursement of document translation fees. Doc. 50 at 9, 50-4 at 2-7. Given the international nature of the case – concerning trademark infringement surrounding an Italian art gallery – counsel provides documentation that his firm spent $10,231.50 for translation of various documents from Italian to English, and vice versa, as required to meet disclosure and discovery obligations. Doc. 50-4 at 2-7. Again, Plaintiff has provided no basis for the Court to find this amount unreasonable. *See OmniGen Research, LLC v. Yongqiang Wang*, No. 6:16-CV-268-MC, 2017 WL 5505041, at *27 (D. Or. Nov. 16, 2017) (awarding translation costs because "[u]nder § 1117(a), Plaintiffs may recover costs including and in addition to those 'taxable costs' permitted under 28 U.S.C. § 1920").

### D. Conclusion.

The Court will grant Defendant's motion and award professional fees of $102,729.00, expert fees of $6,500.00, and translation costs of $10,231.50. *See* LRCiv 54.1, 54.2 (setting forth allowable costs and factors to be considered in determining whether a fee award is reasonable).

## III. Defendant's Motion to Seal.

Courts recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). In order to overcome this strong presumption, a party seeking to seal a judicial record must articulate "good cause" for sealing that outweighs the public policies favoring disclosure. *See id.* at 1178-79; *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (applying "good cause" standard to all non-dispositive motions, because such motions "'are often unrelated, or only

tangentially related, to the underlying cause of action'" (citing *Kamakana*, 447 F.3d at 1179)).

Defendant moves to seal four documents submitted with the motion for attorneys' fees, including portions of Mr. LaCorte's affidavit (Exhibit 1), counsel's itemized task-based statement of fees and expenses (Exhibit 2), an expert fee agreement (Exhibit 3), and Defendant's fee agreement with the Ballard Spahr law firm (Exhibit 5). Doc. 51 at 2-5.

With respect to the LaCorte affidavit, counsel seeks to seal hourly rates and the time spent working on this matter. *See* Doc. 50-1 at 3-5. Counsel argues that the billing rates Ballard Spahr offered Defendant and the amount of time spent on this matter by each attorney are "proprietary" and their disclosure to the public "would cause Ballard Spahr competitive harm." Doc. 51 at 4. This justification does not constitute a particularized showing of harm necessary to rebut the presumption of public access to court filings. "[B]road, conclusory allegations of potential harm" will not suffice. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (citation omitted). "[I]t is commonplace for the number of hours billed and the hourly rate of attorneys to be openly filed on court dockets; without this information the final fees award appears to be drawn from thin air. Furthermore, this type of information is clearly not privileged." *See Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 6901744, at *1 (N.D. Cal. Dec. 8, 2014) (citations omitted); *see also Aylus Networks, Inc. v. Apple Inc.*, No. 13-cv-04700-EMC, 2016 WL 1252778, at *2 (N.D. Cal. Mar. 30 2016) ("the number of hours spent litigating a case and billing rates are not considered proprietary information"). The Court will not seal the LaCorte affidavit. *See* Doc. 50-1.

The Court finds good cause to seal counsel's itemized task-based statement of fees and expenses (Exhibit 2), the expert fee agreement (Exhibit 3), and Defendant's legal services agreement with the Ballard Spahr law firm (Exhibit 5).

With respect to the itemized task-based statement, the Court agrees that the individual entries may reveal confidential information, including counsel's legal strategy and client communications that detail legal services rendered throughout this litigation.

The expert fee agreement contains negotiated terms with Mr. Hochman, including his hourly rate and the terms of his work for Defendant. Defendant has provided in unredacted form the amount it seeks to recover – a $6,500 non-refundable retainer fee. Docs. 50-3 at 2 (redacted), 52-2 at 2 (under seal). And similarly, the Court agrees that the legal services agreement contains confidential client communications reciting private contractual terms of Ballard Spahr's legal representation of Defendant. Docs. 50-5 (redacted), 52-3 (under seal).

The sealing of these documents will have little effect on the public's ability to understand the issues addressed in this order. The Court will grant the motion to seal with respect to Exhibits 2, 3, and 5.

**IT IS ORDERED:**

1. Defendant's motion for attorneys' fees (Doc. 50) is **granted**.
2. Defendant is awarded **$119,460.50** in attorneys' fees and costs against Plaintiff BoxNic Anstalt.
3. Defendant's motion to seal is **granted in part and denied in part** as set forth above. Defendant shall within 14 days of this order file Exhibit 1 in an unredacted format and lodge Exhibits 2, 3, and 5 for filing under seal by the Clerk of Court pursuant to this order.

Dated this 3rd day of June, 2020.

David G. Campbell
Senior United States District Judge